180      315|
216      ¹186|

# Walter R. Kern *v.* Emma B. Howell, Appellant.

[Marked to be reported.]

*Vendor and vendee—Deed—Delivery of deed.*

The signing, attestation and acknowledgment of a deed by the grantor and the recording of it raise a presumption of delivery which even declarations of the grantor that the deed was not delivered will not overcome.

*Deed—Possession—Trust and trustee—Statute of limitations—Parent and child.*

The possession of real estate by a vendor after the execution and delivery of a deed therefor is in trust for the vendee, and the statute of limitations will not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee. This well established rule applies with special force to transactions between father and son.

*Vendor and vendee—Parent and child—Advancement—Presumption— Resulting trust.*

If a parent purchase land in the name of his son it will prima facie be deemed an advancement, so as to rebut the presumption of a resulting trust for the parent.

*Ejectment—Evidence—Prima facie title—Presumption—Parent and child.*

In an action of ejectment by a son against a tenant of his father's executors and trustees, it appeared that the plaintiff had a deed for the land from a firm which had been heavily indebted to the father, and which, by the father's direction, had, in part payment of the debt, conveyed the property in controversy to the plaintiff. Another son who was a member of the firm testified that before the deed was made his father had said that he wanted to give the property to the plaintiff. He also testified that in subsequent conversations with his father in reference to the latter's will, his father had told him that he had provided for plaintiff by means of the property in controversy and other property, the title to which had been directly conveyed to plaintiff. The deed was recorded almost immediately after it was made, and the plaintiff left it with his father for safe keeping. The firm collected some of the rents from the property after the deed was made. After the dissolution of the firm, the son, who had been a member of the firm, collected them without interference by the plaintiff. Neither the plaintiff nor his father had ever been in actual possession of the property. *Held*, (1) that the case was for the jury; (2) that a verdict and judgment for plaintiff should be sustained.

Argued Jan. 14, 1897. Appeal, No. 538, Jan. T., 1896, by defendant, from judgment of C. P. No. 2, Phila. Co., Decem-

ber Term, 1894, No. 769, on verdict for plaintiff. Before STER-
RETT, C. J., GREEN, WILLIAMS, McCOLLUM, MITCHELL, DEAN
and FELL, JJ. Affirmed.

Ejectment for premises 672 Union street in the city of Phila-
delphia. Before PENNYPACKER, J.

The facts appear by the opinion of the Supreme Court.

The court refused defendant's point which was as follows :

The evidence shows that the consideration money for the
conveyance to Walter R. Kern was furnished by Hall and Kern,
and that the equitable title to possession immediately after the
purchase was in them. This being so, the burden is upon the
plaintiff to show a conveyance of such equity to him, and the evi-
dence in this case is not sufficient for that purpose. Your ver-
dict should, therefore, be for the defendant. [2]

Verdict and judgment for plaintiff. Defendant appealed.

*Errors assigned* were (1) in admitting parol testimony to
prove a gift or conveyance of the equitable title to the premises
in question from William H. Kern to Walter R. Kern; (2) above
instruction, quoting it.

*Frank P. Prichard, Bernard Gilpin* and *John G. Johnson,*
for appellant.—The evidence was not sufficient to prove an exe-
cuted gift: Ackerman v. Fisher, 57 Pa. 457 ; Moore v. Small,
19 Pa. 461 ; Christy v. Barnhart, 14 Pa. 260 ; Collins v. Col-
lins, 2 Grant, 117 ; Edwards v. Morgan, 100 Pa. 330 ; Burgess
v. Burgess, 109 Pa. 312 ; Robertson v. Robertson, 9 Watts, 32;
Postlethwait v. Frease, 31 Pa. 472 ; Allison v. Burns, 107 Pa.
50 ; Gratz v. Gratz, 4 Rawle, 411 ; Goucher v. Martin, 9 Watts,
106 ; Meason v. Kaine, 63 Pa. 335 ; Peer v. Peer, 11 N. J. Eq.
432 ; Dana v. Dana, 154 Mass. 491.

*George P. Rich,* with him *Henry C. Boyer,* for appellee.—If
a parent purchase land in the name of his son, it will, prima
facie, be deemed an advancement, so as to rebut the presump-
tion of a resulting trust in the parent: Phillips v. Gregg, 10
Watts, 158.

OPINION BY MR. JUSTICE GREEN, March 15, 1897 :

The plaintiff held a deed in fee simple for the property in

question, and on the apparent state of the title he had a right to recover unless the defendant had a better title. The defendant being a mere tenant in possession the defense was really made by her lessors who were the executors of the will of William H. Kern, deceased. The plaintiff was a son of the deceased, and the title set up by the executors was an equitable title in their testator. This equitable title was based upon an allegation that the testator had furnished the consideration of the deed, and therefore, became the equitable owner by way of a resulting trust. In point of fact, the deed was taken by the firm of Hall & Kern, for bricks furnished by them, but they were so heavily indebted to William H. Kern that they turned it over to him in part payment, and therefore never held any title themselves. It is true they were allowed to collect the rents for several years, but it is manifest from the undisputed testimony in the case that this was permitted by the kind indulgence of William H. Kern, and the rents were not received by them as real owners of the equitable title. On the trial, therefore, the real question in controversy was, who was the owner as between Walter R. Kern the plaintiff, and William H. Kern, the decedent. The learned counsel for the defendant thus states the question at issue. "The plaintiff however relies upon an alleged gift to him of the equitable title to this property: and the sole question in this case is whether the evidence is sufficient to establish such a gift. The defendant contended that it was not, and that the court below should have instructed the jury to find for the defendant. The plaintiff contended that it was sufficient. This is the only question." So far as the plaintiff is concerned he was not in the attitude of one claiming to recover land by an equitable title as against one holding the legal title, because he himself held the legal title, and it was the defendant who was trying to deprive him of that title, by proving an adverse equitable title on the part of William H. Kern. The proof to support that claim was entirely in parol, and consisted of verbal testimony to prove facts in pais essential to establish an equitable, as against a legal, title. It is scarcely correct, therefore, to say of the plaintiff's claim of title that it rests alone upon the sufficiency of parol proof to defeat a legal, and establish an equitable, title. In view of the actual state of the testimony, which was substantially undisputed, the

contest may be regarded as a controversy between two adverse claimants to an equitable title, the plaintiff having the advantage of holding the legal title by an unquestioned deed in fee simple.

The learned court below submitted the question arising out of the parol testimony to the jury, who found in favor of the plaintiff, and the defendant claims there was error in such submission, and that there should have been a binding instruction in favor of the defendant. As the defendant's testimony to defeat the plaintiff's clear legal title rested entirely in parol it must necessarily have been adjudged by the jury, and as the plaintiff's clear legal title was derived from a deed in fee simple, the question whether his claim to the equitable title, in so far as it was founded upon parol testimony, should be submitted to the jury, was scarcely debatable. We are quite clearly of opinion that the case in this aspect was necessarily for the jury. The learned court below left it to the jury in this way : " You will examine all of the testimony carefully and reach a conclusion as to whether or not William H. Kern intended to give, and did give, this property to his son Walter. If he did, your verdict will be for the plaintiff. If he did not, your verdict will be for the defendant."

An examination of the testimony shows that the actual facts of the transaction were testified to only by one witness, to wit, Howard R. Kern, a brother of the plaintiff, and a son of the decedent, William H. Kern. It is upon his testimony that the case for the defendant, as well as for the plaintiff, turns. He was a member of the firm of Hall & Kern who furnished the bricks for which the deed was given. Remembering now that the question was, whether William H. Kern intended to give, and did give, the property to Walter R. Kern, let us consider his testimony briefly.

After describing his firm and their business, he was asked : " Q. And how did the title come to be conveyed to your brother Walter, if you know? A. We were always obtaining money from William H. Kern, and very frequently in taking operations it was necessary for us to take either a mortgage or some property, and not being able to handle it ourselves, we got money from William H. Kern, and paid him back in properties, and at his request the property was put in the name of Walter R. Kern.

. . . . Q. At the present I am asking you whether, at the time this title was placed in your brother's name, your father gave any reason for it at that time, or what was said upon the subject? A. He wanted to give the property to Walter. Q. He said so at that time? A. Yes, he said so. Q. Tell us what he said. A. I made the negotiation with him as I did others, and I said, ' Pop, when we take this house we can't hold it; we want money right along, and what will we do with the house?' And he says, 'Give it to Walter, and if you want any money, if you have to have it, come and see me.'"

The witness then testified that the firm had the deed prepared and title made to Walter R. Kern. Being inquired of as to a subsequent conversation with William H. Kern in regard to the property of the latter, he said he had such a conversation in 1891. He was asked, " Q. You mean in 1891 you had a conversation with him on the subject of property in general which he placed in Walter's name? A. In general. Q. That included this property as well? A. Yes, sir. Q. Will you tell us what that conversation was? A. In 1891 I was in the bank one day and I said, ' Pop, don't you think you had better get your affairs into some sort of shape; something might happen to you?' And he said, 'Yes, I do.' He says, 'I have made a will, my son.' I said, 'Is that so? Where is it?' He says, ' It is around at Mr. Gilpin's office; go around and get it and look at it, and see what you think of it.' I says, 'No; I don't think that is altogether right; you either get it or send for it, and I will come here.' So he did, and I looked at the will and read it over, and I says, ' That is all right; where do Walter and myself come in?' He said, 'Well now I want to talk about that matter: here are a list of properties that I have given Walter.' And he had a list there with a lot of property on it and values which he had set on each property—what he considered that that property was worth. Q. Do you recollect whether this property was on that list or not? A. Yes, sir. Q. This property was on that list? A. Yes, and he had them figured up there, and he said, 'What do you think of these values?' I said, 'Oh, that is a mere matter of opinion; of course I presume they are worth that if you can find anybody to give it.' ' Now,' he said, ' taking that into consideration, and what I have done for you, and what I intend to do for

your children,' . . . He said, ' I think that will be a fair distribution.' He gave his present wife quite a number of properties, and we talked that over, and he said he would take care later on for the children, which he did." " Q. Did you ever have any conversation with your father, prior to his marriage to the present Mrs. Kern, on the subject of this property? A. He talked about that property and other properties, always as Walter's property, asking how they were kept up, and so forth." Speaking of another conversation with his father at the bank when his father announced his intention to marry again, he testified that his father said, " Now I don't want any trouble in the family, son; I want this thing to be all harmonious; I have done a great deal for Walter; I have given him certain properties," enumerating them, and said, "I have done a great deal for you, and I will do a great deal more." He said, " I want this thing to take place, and I want it to be satisfactory to the family." Q. Now you say he enumerated them. Do you recall whether this particular property was in them? A. That property was in; yes, sir." In reply to another question in regard to the deed for this and other properties he said: " I had several conversations, but the last one was on the 6th of March, 1893, just prior to his going south, in which he told me that he wanted Walter—for me to see that Walter came in there and took his deeds away. Q. Said what? A. You see that Walter comes in and takes his deeds away." He said, ' You see Walt. and tell him to take his deeds away. I told him two or three times, and he didn't do it.' . . . Q. Have you any knowledge of other properties that were purchased by your father and given to his son Walter? A. Yes; I know them all. Q. Can you tell us about how many properties there were altogether? A. Probably fifteen, may be more. I can run them all off if you want them. Q. In different parts of the city? A. Yes, sir. Q. Worth about how much in the whole, in round numbers? A. $50,000." In reply to another question he said, " At that time, in 1891, William H. Kern said that he had given these properties to Walter, enumerating them, and it was with a view of having Walter provided for, and he was going to provide for my children, so that the two families would not clash. He said, ' I don't want, after I am dead, any fighting or quarrelling at all; I want everything to be satisfac-

tory and I want to do what is right for you boys." In answer to another question as to a conversation with his father, he said, " He was going on a trip in 1891—in the. fall, I think it was, in the fall or the summer, the late summer—prior to going I happened into the bank, and father told me that Walter had been there, and that he had given him the deeds for the properties which were in his name, which he had given him, and that Walter had returned them to him for safe keeping."

The merest inspection of the foregoing testimony shows that if it was believed, and that was for the jury, it tended strongly to prove that the transaction at the very beginning was intended as an absolute gift of the property to Walter R. Kern, in fee simple, without any distinction of legal and equitable titles. The witness said that Hall & Kern were instructed by William H. Kern to have the deed made to Walter R. Kern, as he wanted to give it to him. In all the conversations he constantly spoke of having given it to Walter, and in discussing the division he had made of his property as between his two sons, he spoke of this property as included in the list of those he had given to Walter. This aspect of the testimony materially changes the character of the question at issue. It is not a controversy as to whether the plaintiff was seeking to acquire an equitable title, either as against the legal title or by the force of parol facts which would suffice to. create an equitable title, but whether he was all the time the owner of the whole title, legal and equitable, by virtue of a solemn deed therefor duly executed and delivered. The deed in terms conveyed the whole title; it was recorded almost immediately, thus eliminating all questions of delivery, and if it was intended as a complete transfer of the whole title it was efficacious to that end from the beginning. In Ingles v. Ingles, 150 Pa. 397, it was held that the signing, attestation and acknowledgment of a deed by the grantor and the recording of it raises a presumption. of delivery which cannot be overcome by declarations of the grantor that the deed was not delivered. The possession of real estate by a vendor, after execution and delivery of a deed therefor, is in trust for the vendee, and the statute of limitations will not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee. See also Connor v. Bell, 152 Pa. 444. Even, there-

fore, if William H. Kern had been the former owner, and had made the deed to his son himself and had it recorded, and, nevertheless, had remained in possession, he would have been a trustee for his son so far as the title was concerned. In Ingles v. Ingles we said, " This well established rule applies with special force between a father and his son. In such instances it is not unusual for the vendee to leave the vendor in possession for an indefinite period or even for life. Such transactions are often arrangements to suit the family convenience. The possession of the vendor is the possession of the vendee."

But in this case William H. Kern was not the grantor of the title, and he never was in the actual possession of the property. He allowed Hall & Kern to take the rents for several years, as he was constantly lending them money. When they ceased business the rents were paid to William H. Kern, and Walter R. Kern did not interfere. But he certainly did not lose his title under the deed by so doing. We discover nothing in the testimony inconsistent with the avowed purpose of William H. Kern to make an absolute gift of the property to his son, Walter R. Kern, by means of the deed of 1876, from the former owner. On the contrary, the great weight of the testimony is that he deliberately intended so to do, and to embody the conveyance as a part of the provision he wished to make, and did make, for his son's support. It would have been serious error to withdraw from the jury the question of intent to make the gift to his son, and it was, we think, quite as much as the defendant could expect to have it so submitted. The jury having found, upon testimony sufficient for that purpose, that William H. Kern did intend to give the property to his son Walter R. Kern, and caused a deed to be made in accordance therewith, the court below and this court would be precluded from any inference that the deed conveyed only the bare legal title, leaving the equitable title still open to contest. This is especially the case where the transaction is between father and son. In Phillips v. Gregg, 10 Watts, 158, it was held that if a parent purchase land in the name of his son it will prima facie be deemed an advancement, so as to rebut the presumption of a resulting trust for the parent. ROGERS, J. delivering the opinion said, " It is a general rule in equity that when a man buys land in the name of another, and pays the consideration money,

the land will generally be held by the grantee in trust for the person who so paid the purchase money. But the doctrine must be taken with some exceptions, which are not inconsistent with the general principle. For when a parent purchases in the name of the son, the purchase will be deemed prima facie an advancement, so as to rebut the presumption of a resulting trust for the parent. The moral obligation of a parent to provide for his children is the foundation of the exception; or rather of the rebutter of the presumption; since it is not only natural, but reasonable, to presume that a parent by purchasing in the name of a child means a benefit to the latter, in discharge of the moral obligation, and also as a token of parental affection." In view of the whole testimony in this case we do not see how we can sustain either of the assignments of error and they are therefore dismissed.

Judgment affirmed and appeal dismissed at the cost of the defendant.