**TWAY et al. v. HARTMAN, Adm'x.**

No. 26532.    Sept. 28, 1937.

Rehearing Denied Feb. 1, 1938.

E. F. Lester, Claud Briggs, Fred M. Hammer, and Charles Swindall, for plaintiffs in error.

John Barry and Howard W. Patton, for defendant in error.

HURST, J.  This is an action to recover damages for the death of W. F. Hartman, who was killed while working on a pile driver used in the construction of a bridge over Spring Creek, near Woodward, Okla. The work was being done by Tway, Inc., a construction company, and the machinery and equipment in use at the time were rented to the company by Robert R. Tway, its president.  It is alleged that the deceased was employed by both the company and Robert Tway personally and that the concurring negligence of both caused his death.

The pile driver used on the occasion consisted of a derrick about 60 feet high and a 9,500 pound hammer guided up and down by steel-lined slides built in the derrick. The slides were lined with steel liners running from the top of the derrick almost to the ground, but on this particular job the derrick had been extended so that the steel liners inside the slide stopped about 12 feet above the ground.  Plaintiff's testimony was that the ends of these liners were square and not beveled or inlaid in the wood, thus preventing the smooth passage of the hammer up past this point of juncture. Defendants' testimony, however, was to the contrary and that the slide was smooth throughout. The hammer was elevated by a cable running through a block and tackle hooked onto the hammer and through pulleys in a block at the top of the derrick.  The cable then extended on down to the engine where the power was derived.  At the top of the derrick was a small steel oval link about seven inches long and three and a half inches wide holding the cable and pulleys to the crown block.  This link had been tied in such manner that it was in a horizontal position.  On the occasion in question, the

hammer was set up between the slides to get ready to drive piling, and as the hammer was being elevated, the deceased and another employee were standing on the derrick at a point about 14 feet above the ground guiding it with crowbars. Other workmen were guiding it from below. When it reached a point about where the steel runners ended, the steel link at the top of the derrick broke, and the cable, pulleys, and block fell down upon deceased's head, inflicting the fatal injury. Plaintiff's testimony was that the hammer was being lifted from a ring or ear on the side, rather than from the pulleys in the center of the top thereof, thus pulling it out of line and causing it to catch on the protruding ends of the steel runners as it was lifted. But again defendants' testimony was to the contrary and was that the hammer was being properly lifted from its top. There was also a conflict of testimony as to whether a proper platform was built in the derrick at the place where deceased was required to stand to do the required work when the accident occurred and as to whether he was standing in his proper place. The jury returned a verdict in favor of plaintiff for $10,000, and judgment was rendered thereon against both defendants, who bring this appeal.

1. It is first contended that the trial court erred in overruling the motion of defendants for a continuance on the grounds that one of their attorneys, Senator Claud Briggs, was a member of the Senate of the state of Oklahoma, which was in session at the time of trial. They rely on section 396, O. S. 1931, which provides in part:

"* * * That if a party or his attorney of record is serving as a member of the Legislature or the senate * * * such fact shall constitute cause for continuance, * * * the refusal to grant which shall constitute error and entitle such party to a new trial as a matter of right."

We cannot agree with this contention, for in the case at bar the defendants were ably represented by other eminent counsel, who were attorneys of record prior to the session of the Legislature attended by Senator Briggs. Senator Briggs did not become attorney of record until after the convening of the session of the Legislature, which he attended. To be an attorney of record the attorney's name must appear somewhere in the permanent records or files of the case or on the appearance docket. The name of Senator Briggs appears in the pleadings for the first time on the motion for the continuance under discussion. This motion was filed during the session of the Legislature. Prior to that time all pleadings of the defendants had been signed by E. F. Lester and Fred M. Hammer. Neither did the name of Senator Briggs appear on the appearance docket. Defendants contend that certain correspondence between the firm of Lester & Briggs and the court clerk and the attorneys for plaintiff was sufficient to constitute Senator Briggs an attorney of record before the Legislature convened. But none of this correspondence was filed with the case in the office of the court clerk. Under these circumstances we hold that the entry of Senator Briggs into the case as attorney of record during the session of the Legislature, and at which time the defendants were represented by other counsel, did not entitle defendants to a continuance as a matter of right under said statute. Holloway v. State (1927) 37 Okla. Cr. 24, 255 P. 1022; Otey v. State (1928) 39 Okla. Cr. 61, 263 P. 155; Cox v. State (Ark.) 40 S. W. (2d) 427; Burkhart v. State (Tex. Cr. R.) 26 S. W. (2d) 238; People v. Goldenson (Cal.) 19 P. 161.

2. Several propositions are presented in support of the contention that the court erred in rendering judgment against Robert R. Tway personally. We find it necessary, however, to discuss only the third and fourth contentions: That the court erred in admitting in evidence the separate answer of Robert R. Tway, and in instructing the jury that Robert R. Tway admitted that the deceased was employed by him at the time of the accident. The answer first denied each and every allegation therein contained except those thereafter specifically admitted. It was then specifically admitted that plaintiff was the administratrix of the estate of W. F. Hartman, and further that Robert R. Tway was the president of Tway, Incorporated, during the times mentioned in plaintiff's petition. The next paragraph of the answer stated an affirmative defense of contributory negligence and contained therein the following statement:

"***That the said W. F. Hartman was guilty of carelessness and negligence in that he failed to use the large platform, which was placed in said rig or derrick for the defendants' employees to use in the per-

formance of the work required of them.***"

The next paragraph in the answer stated the affirmative defense of assumption of the risk, and the following language is found in said paragraph:

(That even if Hartman did lose his life) "that same was the result of, and occasioned by, the risk of his employment. * * *"

And in the conclusion of this paragraph, it was further stated:

"***And the fatal injury, if any, were occasioned by the risks incident to his employment with this defendant, and were assumed by him."

It is the contention of plaintiff that this is an admission that W. F. Hartman was in the employ of the defendant, Robert R. Tway, personally. The answer was introduced in evidence for this purpose, and the court instructed the jury in part:

"***And that under the pleadings filed by each of the defendants, it is admitted that the said W. F. Hartman, plaintiff's deceased, was so employed by them. You will therefore find that he was so employed by each of the defendants at the time of the alleged accident."

There appears to be some confusion in cases dealing with admissions in pleadings, particularly regarding their conclusiveness, but if we divide the cases into two main groups into which they may be classified under the facts, and recognize the separate principles applicable to each group, much of the seeming difficulty is clarified. The first group of cases are those in which the admission is contained in the pleading upon which the case is tried, and the other group consists of those cases where the admission is contained in a pleading which has been abandoned or superseded by an amended pleading, or cases where the admission is in a pleading in other proceedings. As to the first group, generally speaking, evidence is not admissible to controvert facts admitted by a party in his pleadings. 1 R. C. L. 499. The rule is stated in Lee v. Little (1921) 81 Okla. 168, 197 P. 449, relied on by plaintiff, that "where a party to an action makes solemn admissions against his interest in a pleading, they should be treated as admitted facts, and he will not be heard to question the correctness thereof at any stage of the case in the trial court or on appeal, when properly preserved in a transcript or case-made so long as they remain

a part of the record. If the statements or admissions were made under an honest mistake or misapprehension of what the facts really were, and he desires to be relieved from the effects thereof, he should apply to the trial court for leave to withdraw such admissions or pleadings." In that case, admissions in a verified answer, upon which the case was tried, were treated as admitted facts and conclusive on the defendant. This case relies upon Rogers v. Brown (1905) 15 Okla. 524, 86 P. 443, which in turn relies on Lane Implement Co. v. Lowder (1901) 11 Okla. 61, 65 P. 926. In both of these latter cases amended pleadings were filed, and it is not clear whether the party intended to abandon his former pleading or not, but the court held that the solemn admissions in the former pleadings are binding in any event. But we think this rule should not apply to admissions in abandoned or superseded pleadings under the majority view in this country, and we agree with the criticism of Lane Implement Co. v. Lowder, supra, expressed in Lane v. Choctaw, O. & G. R. Co. (1907) 19 Okla. 324, 91 P. 883, wherein the court said:

"No authority is cited supporting this rule. It is probably stated too broadly, and is subject to some modification. The rule, as stated, supra, is correct as applied to an amendment to a pleading: but the general rule is that an original pleading is superseded, and its effect as a pleading destroyed, by filing an amended pleading which is complete in itself and does not adopt any of the former pleading by reference."

The rule pertaining to the second group is well stated in Lane v. Choctaw, O. & G. R. Co., supra, as follows:

"The weight of authority and better reasoned cases support the rule that a pleading, or an admission or allegation in a pleading, notwithstanding it may have been withdrawn, stricken out, or superseded by an amended pleading, is competent in evidence, and may be introduced against the party from whom it proceeded, like any other admission or declaration, subject, however, to explanation by the party who made it. This rule rests on the general principle that whatever a party has said about his case may be proved against him, and whatever writing he has signed or authorized may be, if relevant, introduced against him, the weight of such evidence to be left to the court or jury trying the case."

In these cases the original pleading is

not conclusive, and unless it is introduced in evidence the admission cannot be considered. When once introduced, however, it should be weighed in the same manner as other evidence. See discussion in 14 A. L. R. 22 and 90 A. L. R. 1389, note p. 1393.

The case at bar comes within the first group—where the admission contended for is in the pleading in the cause— and this presents an additional question of legal interpretation peculiar to that type of case. We must determine whether the language in the pleading constitutes a solemn judicial admission such as will dispense with proof, and become an admitted fact no longer in issue in the case. This is purely a question to be determined by the court. In making such determination the rule is said to be, "An admission in an adversary's pleading, to be available, must be taken with all the qualifying clauses and limitations, which the pleader has included in it. In other words, it must be taken as a whole; and, where facts are alleged in connection with an admission which nullify it, its effect as an admission is destroyed." Coleman v. Missouri Valley Electric Co. (1934) 169 Okla. 264, 36 P. (2d) 730; Johnson v. Bement (1925) 109 Okla. 260, 235 P. 535; Oklahoma Moline Plow Co. v. Smith (1914) 41 Okla. 498, 139 P. 285. We do not think that the pleading under discussion reaches the dignity of a judicial admission. Considering the instrument in its entirety, we find two specific admissions followed by two statements of affirmative defense. The admission relied on is not specifically designated as such, but is found in the language of the affirmative defenses pleaded. We think it clear that it was not intended to be a specific admission. The governing rule should be whether the pleader intended to eliminate proof on the issue claimed to be admitted. We know the manner in which pleadings are many times written, and the court should not be too quick to interpret chance words as admitted facts. On the other hand, we do not infer that we are relaxing the binding effect of solemn admissions, but the intention must be gathered from a realistic interpretation of the pleading in its entirety.

But inasmuch as abandoned and superseded pleadings may be introduced in evidence to show admissions against interest, it follows that where the pleading in the cause is not sufficient to constitute a judicial admission, it can, nevertheless, be introduced in evidence for what it is worth as an admission against interest the same as any other writing of the party. Such was the case of Gulf, C. &. S. F. R. Ry. v. Nail (1932) 156 Okla. 294, 10 P. (2d) 668, where the court held that an admission "made in the form of a contention by the attorneys in attempting to set out a defense" was admissible in evidence, but the jury were bound to consider it with all factors affecting its value. We find, therefore, that the court did not err in permitting this pleading to be introduced in evidence. But it then becomes a question of evidence, and in view of the other testimony, the court erred in instructing that it was admitted by the pleadings that W. F. Hartman was employed by Robert R. Tway as well as by Tway, Inc.

If the issue of employment is eliminated from the case, the record does not contain any competent evidence sufficient to support the verdict against Robert R. Tway personally. There is no evidence to show that the materials he furnished were inherently defective at the time they were delivered by him to Tway, Inc., or that any changes that were made in the rig were under his direction or control. The record does not show that he exercised any control or supervision over the operation of the pile driver at the time of the accident. Under such circumstances the giving of the instruction complained of is reversible error as to Robert R. Tway personally.

As a counter proposition, plaintiff states the rule that the failure to deny an allegation of agency under oath is equivalent to an admission of such agency and no further proof of the agent's authority is required. But we fail to see where this rule applies. Section 220, O. S. 1931, requires the verification of the denial of "appointment of authority." There is no question of liability by reason of the acts of any agent or by reason of any appointment of authority. The action is by an employee against his alleged employers.

3. Defendants both contend that the court erred in admitting evidence to the effect that there was some kind of a platform put in the derrick after the accident occurred. It is not doubted that it is er-

ror to show repairs in machinery and premises after the occurrence of the accident in question. Shawnee Gas & Electric Co. v. Motesenbocker (1913) 41 Okla. 454, 138 P. 790; Kaw Boiler Works v. Frymyer (1924) 100 Okla. 81, 227 P. 453. But in the case at bar there was a conflict in the testimony as to whether there was a platform in the derrick at the place where deceased was required to stand at the time of the accident, and the testimony is competent on this issue. From reading the entire record we cannot say it was admitted for any other purpose.

4. Defendants also complain of the refusal of the court to give their requested instruction No. 1, and in giving instructions Nos. 12 and 14 to the jury. They contend that their requested instruction No. 1 defines concurrent negligence and that it is nowhere defined in the instructions given. The instructions, considered as a whole, were sufficient on this issue. Instructions Nos. 12 and 14 quote verbatim sections 10886 and 10890, O. S. 1931. Defendants contend that they are abstract, and that there is no evidence in support thereof. The first section states the duty existing on the part of anyone constructing mechanical contrivances for the erection of bridges, among other things, and the latter section imposes personal liability on any employer furnishing defective machinery for such purposes. Under the evidence in the case at bar, it was clearly proper to quote these statutes verbatim.

5. There is no merit in the defendants' contention that the verdict of the jury was contrary to the law and the evidence on the ground that plaintiff is bound by the deposition of her witness Stone, which, it is alleged, shows that neither of the defendants were guilty of negligence. There were other witnesses testifying on the same points, and the conflicting facts were questions for the jury.

6. We deem it unnecessary to discuss the evidence in any more detail than has already been pointed out in determining the question of whether the verdict against Tway, Inc., was supported by any competent evidence. Although the evidence is conflicting on practically every material point, yet from a careful examination of the record we think it clear that there was competent evidence to establish the liability of Tway, Inc., if the jury should so find. In this action we are not at liberty to disturb the verdict of the jury if there is any competent evidence which will support it. Y. & Y. Operating Co. v. Pugh (1937) 179 Okla. 198, 65 P. (2d) 186.

7. As a final proposition, plaintiff contends that the verdict is excessive, and for that reason the case should be reversed. It is well settled that a verdict of a jury will not be set aside for this reason unless it appears that it is so excessive as to raise the presumption that the jury was actuated by passion and prejudice. Boling v. Asbridge (1921) 84 Okla. 280, 203 P. 894. In the case at bar the deceased had a life expectancy of 35.33 years. The evidence was conflicting as to what he earned, ranging from in the neighborhood of $10 to $45 per week, and there was further evidence of frequent periods of unemployment, but this issue was submitted to the jury under proper instructions, and we cannot say that the jury was actuated by passion or prejudice.

The judgment against Tway, Inc., is affirmed, and the judgment against Robert R. Tway personally is reversed and the case remanded for a new trial, with directions to proceed not inconsistent with the views herein expressed.

OSBORN, C. J., and WELCH, CORN, GIBSON, and DAVISON, JJ., concur. BAYLESS, V. C. J., and PHELPS, J., absent. RILEY, J., not participating.