GAWF et al. v. GAWF.

No. 34121.   Jan. 15, 1952.

Rehearing Denied Feb. 26, 1952.

*240 P. 2d 1095.*

E. C. Hopper, Eufaula, for plaintiffs in error.

White & Parris, by H. B. Parris, Eufaula, for defendant in error.

WELCH, J. By proper next friend the two minors commenced this action to recover 80 acres of farm land with specified damages for withholding it, to establish title in plaintiffs and to quiet title and for an accounting of rents and profits. We will treat the case as a jury case since all parties so treated it in the trial court and here, and no contrary contention is made by any one. The controlling question is whether the land is owned by the minor plaintiffs, or by defendant, W. W. Gawf.

Admittedly, the defendant acquired title in 1926, and occupied same by himself or by his tenants until late in 1930. Throughout 1931 and 1932 John L. Gawf and his family occupied and farmed the premises and they started farming the same for the year 1933, but John L. Gawf and his wife Charlsie separated early in 1933, perhaps on March 8th, or early in March, 1933, or earlier in the year 1933, and left the premises. The defendant, W. W. Gawf, came back into possession of the premises early in 1933, and farmed it that year by himself, or through tenants, and he has so occupied the premises ever since.

The plaintiffs contend that on November 30, 1930, W. W. Gawf gave the land to his son, John L. Gawf, by quitclaim deed, and that John L. Gawf conveyed the same by quitclaim deed to plaintiffs, who are his children, on January 19, 1948, and both such quitclaim deeds appear of record in proper form.

Defendant, W. W. Gawf, contends that the purported quitclaim deed from him to his son dated November 30, 1930, was a forgery; that he and his son discussed a plan of sale to the son, but it was never consummated and he never signed or delivered any deed to his son; that he did not know the quitclaim deed was of record until

near the end of 1947, or early in January, 1948; that he then wrote his son John L. Gawf who had lived in Oregon for a number of years, sent him a prepared deed and requested his son to execute a quitclaim deed back to him to perfect his record title; that his son did not respond directly, but instead executed and delivered his quitclaim deed to the plaintiffs in this action. Thereafter this action was commenced by the minor plaintiffs on March 1, 1948.

The case was submitted to a jury on issues of whether or not the quitclaim deed shown of record as executed by the defendant was a forgery, and whether or not the defendant had been in continuous adverse possession of the land for the fifteen years preceding March 1, 1948, the date the present action was commenced. There was no request for separate or special findings.

The jury returned a verdict with general finding for the defendant and judgment was entered for the defendant.

In appeal the plaintiffs first contend:

"The fifteen-year Statute of Limitations is not applicable in the instant case; and if applicable, said period had not run at the time of filing suit, and service of summons."

As above noted, the defendant and others, in substance, testified that he had caused the land to be cultivated and a crop produced thereon in the year 1933, and had used the proceeds derived from such activity without claim from any one and had since used the land for his own purposes and profit without claim or molestation from any one until March 1, 1948. From this testimony, and testimony concerning the separations of John L. Gawf and wife, and their apparent disregard of any rentals or profits from the land during 1933, or at any time thereafter, a reasonable inference may be drawn that the defendant was in peaceable and exclusive possession of the premises throughout the year 1933

and the succeeding years until March 1, 1948, or a period of more than fifteen years.

It is suggested by the plaintiffs that under the testimony of Charlsie Gawf, now Wilson, the defendant could not have entered into exclusive possession of the premises until after March 8, 1933, the date of her departure therefrom.

Neither the court nor the jury was bound by any particular testimony of the witness though not directly contradicted, but they were free to consider all facts and circumstances in evidence and all reasonable inferences to be drawn therefrom at variance with such testimony. Cummins v. Chandler, 186 Okla. 200, 97 P. 2d 765.

The jury is the sole judge of the credibility of the witnesses and of the weight and value to be given their testimony, and when an issue framed by the pleadings is such as is properly triable to a jury and there is any evidence in any permissible inference reasonably tending to sustain the claims of a party, the evidence is sufficient to withstand demurrer and it is the duty of the court to submit such claim to the jury. Gordon v. Continental Ins. Co., 182 Okla. 240, 76 P. 2d 1055.

The plaintiffs introduced in evidence a petition for divorce filed by Charlsie Gawf and against John Gawf on April 24, 1933. The petition, bearing district court case No. 6845, contains an allegation that John Gawf is possessed of an 80-acre farm and certain personal property.

Admittedly, the reference was to the same tract of land that is here involved. W. W. Gawf, the defendant herein, was made an additional party defendant in the divorce action.

Plaintiffs introduced in evidence a journal entry of judgment from case No. 6845 which reflects that on August 8, 1938, Charlsie Gawf was granted divorce from John Gawf. The said journal entry recites that "the question of alimony and property rights or division is held open for the present."

The plaintiffs assert that since commencement of the divorce action, case No. 6845 in April or May, 1933, and particularly since the entry of the divorce decree therein in 1938, containing the provisions that "the question of alimony and property rights or division is held open," the property involved has been in custodia legis.

Custodia legis, or in custodia legis, literally means, "In custody or keeping of the law." The term involves the actual domination over some objective thing by the court. The thing may be corporeal or incorporeal, but it is not a controversy, a question, or an inquiry. 25 C. J. S. p. 68.

The order of the court in case No. 6845, that "the question of alimony, and property rights or division is held open for the present," is but an expression of the court's continuing jurisdiction over the question of alimony and property rights between the parties, and was in nowise a taking of any property in custody by the court. The mere filing of the action claiming rights in the property and the pendency of that action does not show an actual domination over the property by the court. Passing over the question whether this evidence was admissible, we find nothing therein to justify reversal.

The plaintiffs next contend:

"The evidence is clearly insufficient to establish that the deed from W. W. Gawf to John L. Gawf was a forgery; and the instructions to the jury thereon are a misstatement of the law, erroneous, improper and prejudicial to plaintiffs."

In argument plaintiffs cite Winn v. Willmott, 138 Okla. 177, 280 P. 808; Elliott v. Knappenberger, 177 Okla. 303, 58 P. 2d 1240, and other cases of like import. In the Winn case, in the syllabus, said the court.

"Where a deed of conveyance is regular on its face, and bears the signa-

ture of the grantors and the regular certificate of acknowledgment signed and sealed by a notary public of this state, it imports verity, and impeachment thereof on the ground of forgery can be sustained only by clear, unequivocal, and convincing testimony.

" . . .

"The presumption of validity that attaches to a deed to realty, shown to be regular in execution upon its face, cannot be overcome by the uncorroborated testimony of the grantors alone, where the surrounding facts are as consistent with the validity of the deed as they are with the denials of the grantors."

In the Elliott case, in the syllabus, it is said:

"The evidence to impeach a certificate of acknowledgment to a deed must be clear, cogent, and convincing; such as produces a conviction to a moral certainty that the certificate is false.

"Unless the testimony of the grantor is sufficient to establish to a moral certainty that the certificate of acknowledgment to a deed is false, it must be corroborated.

"Where the circumstances are as strongly in favor of the truthfulness of a certificate of acknowledgment as in the falsity thereof, there is no substantial corroboration of the testimony of the grantor."

Herein, the evidence offered with respect to the execution of the deed was such as the record thereof imports. The acknowledging officer named in the instrument was shown to be deceased. The original instrument was not offered in evidence or its whereabouts explained. John L. Gawf, the grantee named in the instrument, gave no testimony in open court or by deposition.

The defendant, named as the grantor in the recorded instrument, testified that he did not sign the deed. We note there was testimony of a continuous course of action and conduct in the use and management of the land over a long period of years by the defendant as was clearly consistent with a continuing claim of ownership and inconsistent with an idea that he had parted with title to the land. These circumstances in proof appear strongly corroborative of defendant's testimony in denial of execution of the deed.

We deem the evidence sufficient to justify a finding of the jury that the deed in question was not executed by the defendant and that the instrument was a forgery.

The plaintiffs contend that the instructions given by the trial court were erroneous and insufficient in not containing a proper reference to the character of testimony and evidence as is necessary in impeachment of a certificate of acknowledgment to a deed. It is asserted "the instructions given by the court completely leave out and ignore the proposition of presumption of validity of such certificate and that the same cannot be overcome by the uncorroborated testimony of the grantor."

We note that in instruction No. 6 as given by the trial court the jury was advised that a certificate of acknowledgment to a deed, when the same is regular on its face, is presumed to speak the truth and is strong evidence of the fact therein stated. In the same numbered instruction the jury was advised that on the issue of whether or not the deed was a forgery the burden is upon the defendant to show the same was not executed by him, "and that said evidence can only be sustained by clear, cogent and convincing testimony which amounts to a moral certainty."

The rules we have set forth above, and as announced in the cases cited, supra, are all of proper consideration by the trial court in the consideration of a demurrer to the evidence, but on submission of the issue of forgery to the jury there can be no reason for a reference in the instructions to the effect of a lack of corroborative evidence or what constitutes corroboration.

Herein, the jury was advised of the probative effect, or of the evidentiary

weight and value, to be accorded a certificate of acknowledgment to a deed regular on its face, and of the measure of proof required in impeachment of the certificate.

We find no erroneous statement of law in the instructions given nor any insufficiency therein of prejudice to the plaintiffs.

The plaintiffs assert that prejudicial error was committed by the trial court in refusing to admit in evidence certain letters purportedly written by John L. Gawf to John Burns and received by John Burns.

John Burns was not a party to the instant action, and John L. Gawf was not a witness in person or by deposition at the trial of the case. We find no basis in law to support the complaint of the plaintiffs in reference to the exclusion of the letters from consideration of the jury.

The plaintiffs assert:

"The verdict of the jury and the judgment rendered thereon are clearly against the preponderance of testimony, and motion non obstante should have been sustained."

When a jury has returned its verdict the trial court is without jurisdiction to enter judgment non obstante veredicto, unless the party in whose favor such judgment is rendered would be entitled to judgment on the pleadings, or the jury has returned special findings of fact contrary to the general verdict.

A motion for a judgment non obstante veredicto does not present for consideration errors in submission of evidence or the sufficiency of the evidence to sustain the verdict. Martin v. National Bank of Claremore, 182 Okla. 217, 77 P. 2d 40, and Garrett v. Kennedy, 193 Okla. 605, 145 P. 2d 407.

Herein the pleadings are not such as would entitle plaintiffs to a judgment on the pleadings. No special findings or interrogatories were requested, or submitted, and the jury returned its verdict with a general finding for the defendant. The trial court committed no error in overruling the motion for judgment non obstante veredicto.

The judgment of the trial court is affirmed.

CORN, GIBSON, DAVISON, JOHNSON, and BINGAMAN, JJ., concur. HALLEY, V. C. J., and O'NEAL, J., dissent.

HALLEY, V.C.J. (dissenting). The majority opinion disposes of this case on questions which to me are not the real questions involved in the suit. The trial court submitted the case to a jury on two propositions: First, whether or not the quitclaim deed from W. W. Gawf to John L. Gawf, which was duly acknowledged and filed for record, was a forgery; and, second, whether or not W. W. Gawf had obtained the property by adverse possession for more than fifteen years. As to the deed being a forgery, W. W. Gawf pleaded twice, first, in his answer and again in an amended answer, which was verified before a notary. public, that he had signed the quitclaim deed referred to; and that being the case, it was impossible for the deed to be a forgery.

The evidence as to forgery is clearly insufficient. This court laid down the rule in Elliott v. Knappenberger, 177 Okla. 303, 58 P. 2d 1240, as follows:

"1. The evidence to impeach a certificate of acknowledgment to a deed must be clear, cogent, and convincing; such as produces a conviction to a moral certainty that the certificate is false.

"2. Unless the testimony of the grantor is sufficient to establish to a moral certainty that the certificate of acknowledgment to a deed is false, it must be corroborated.

"3 Where the circumstances are as strongly in favor of the truthfulness of a certificate of acknowledgment as in the falsity thereof, there is no substantial corroboration of the testimony of the grantor.

"4. Where the evidence of the grantor in an effort to impeach a certificate of acknowledgment of a deed is not clear, cogent and convincing, such as produces a conviction to a moral certainty that the certificate is false, and is not corroborated, it is not error to sustain a demurrer thereto."

In McElroy v. Calhoun et al., 177 Okla. 38, 57 P. 2d 827, it is said in the first syllabus:

"A deed valid upon its face and acknowledged before a proper officer is presumed to be valid, and that presumption may not be overcome by evidence consisting only of the uncorroborated testimony of the grantors."

Is the evidence shown by the record sufficient to warrant the finding that the deed of W. W. Gawf to John L. Gawf was a forgery? There is no direct evidence on this issue except the testimony of W. W. Gawf, the grantor. He was a man 80 years of age and naturally could not remember definitely all that occurred in the year 1930, 18 years before he testified. On direct examination he denied that he ever executed such a deed. On cross-examination, when confronted with a portion of his answer and cross-petition which had been stricken by the court, but which contained the admission of the execution of the quitclaim deed, he admitted that he had signed the verification to the answer and cross-petition. There is no question, under the rule announced in Tway v. Hartman, 181 Okla. 608, 75 P. 2d 893, but that this pleading in the amended answer, about the execution of the contract and quitclaim deed, could be used as an admission against interest of the defendants in this case.

The circumstances are more presumptive of the acknowledgment by W. W. Gawf of the deed in question. R. D. Howe, the notary public whose certificate appeared on the deed, had died. The deed had been of record for some 18 years. W. W. Gawf had known of the claim of Charlsie Gawf that the land belonged to John L. Gawf at least as early as 1938. Charlsie Gawf asserted that John L. Gawf owned the land in 1933 and in 1938, when she undertook to secure a division of property in her divorce action. It is unbelievable that a quitclaim deed would be used to extend the term of a contract of sale, and contain no reference to such contract and no words of extension, when such contract could have been extended by writing thereon a few words, including the term of the extension and the signature of the party agreeing to sell. It was error to submit the question of forgery to the jury.

On the question of the statute of limitations, the testimony is clear and unrefuted that John L. Gawf continued to live on this property until two weeks after March 8, 1933, and this lawsuit was filed on March 1, 1948, so there was no question in this regard for the jury to pass on.

I do not think the possession of W. W. Gawf beginning in March, 1933, was adverse. In Brown v. Privette, 109 Okla. 1, 234 P. 577, we held that by the execution and delivery of a deed in general terms the entire legal interest in the premises vests in the grantee, and if the grantor continues in possession afterward, his possession will be that either of tenant or trustee of the grantee. He will be regarded as holding the premises in subserviency to the grantee, and nothing short of an explicit disclaimer of such a relation and a notorious assertion of right in himself will be sufficient to change the character of his possession. In such case the grantor is not deemed in law to have adverse possession against his grantee or those deriving title through him. While, in my opinion, it is possible, in some cases, for the grantor to hold adversely to his grantee, the possession of the grantor cannot become adverse to the title of his grantee without an explicit disclaimer of the grantee's title and a notorious assertion of the grantor's claim. See 2 C.J.S., Adverse Possession, §95, p. 652. In this case it is clearly apparent from the facts that W. W. Gawf, the grantor

of John L. Gawf, had deeded this land to John L. Gawf, realizing that there was more against it than it could have been sold for on the depressed market at that time; and W. W. Gawf was fully cognizant of the claim that the wife of John L. Gawf would have in a divorce proceeding; and it was because of the failure of the first mortgagee to foreclose its mortgage that anyone was able to get anything out of this property.

W. W. Gawf claimed that he held the property from 1926, but the facts are clear that John L. Gawf lived on and farmed the land while married to the mother of the minor plaintiffs during the years 1931, 1932, and part of 1933. There is no evidence in the record to indicate that W. W. Gawf, when he went back into possession of the property (not actual, but through tenants) in 1933, ever claimed that he was anything other than a tenant of or a trustee for his son, John L. Gawf. This view that the possession of land by the vendor after the execution and delivery of a deed therefor constitutes a trust for the vendee, and that the statute of limitations does not begin to run until the vendor asserts an adverse holding by some unequivocal act brought to the knowledge of the vendee, is propounded in Kern v. Howell, 180 Pa. 315, 36 A. 872, 57 Am. St. Rep. 641; Brooks v. Brooks, 105 Neb. 235, 180 N.W. 41. Undoubtedly, John L. Gawf believed that he held the ownership of this land, because when he gave a quitclaim deed he gave it to his sons, to whom he owed a distinct responsibility. In my opinion, there was no adverse possession by the father, W. W. Gawf.

Because of the fact that I am firmly convinced that W. W. Gawf gave a good and valid quitclaim deed to his son, John L. Gawf, and same was properly recorded, and the fact that he has not occupied the property adversely since 1933, I dissent from the majority opinion.