**Josephine HEILIG, Appellant,**

v.

**STUDEBAKER CORPORATION, a corporation, Appellee.**

**No. 7868.**

United States Court of Appeals
Tenth Circuit.

June 21, 1965.

Robert J. Woolsey, Tulsa, Okl., (Farmer, Woolsey, Flippo & Bailey, J. C. Farmer, Otho Flippo, J. B. Bailey, Lawrence A. G. Johnson, Richard L. Harris, Tulsa, Okl., on brief), for appellant.

Joseph A. Sharp, Tulsa, Okl., (Best, Sharp, Thomas & Glass and Jack M. Thomas, Tulsa, Okl., on brief), for appellee.

Before MURRAH, Chief Judge, and PHILLIPS and BREITENSTEIN, Circuit Judges.

ORIE L. PHILLIPS, Circuit Judge.

Josephine Heilig brought this action against Studebaker Corporation to recover damages for personal injuries. At the trial the jury returned a verdict in favor of Studebaker. Judgment was entered accordingly and Mrs. Heilig has appealed.

In August, 1963, Studebaker was engaged in Tulsa, Oklahoma, in the business of selling new and used automobiles

and maintained a service department in connection therewith. On August 19, 1963, Mrs. Heilig and her husband looked at a used 1958 Cadillac automobile, held for sale by Studebaker, with a view to purchasing the same. On August 21, 1963, a salesman for Studebaker turned the Cadillac over to Mrs. Heilig for a trial drive. She drove the car to a service station in Tulsa, where she purchased some gas. She then went to the Grand Hotel in Tulsa and picked up a friend to accompany her on the trial ride. As she approached the hotel she noticed that a light, the function of which was to show when the emergency brake was on, remained lighted when the brake was off. She returned to the Studebaker agency and the defect in the light was corrected. She then drove to a point near the courthouse in Sapulpa, Oklahoma, and there turned around and started back to Tulsa. When she reached a point near the intersection of 15th and Peoria Streets in Tulsa, where Peoria Street slopes toward the intersection, she applied her brakes to avoid contact with an automobile in front of her. She pushed the brake pedal clear to the floorboard, but no braking action resulted. Thereupon, she turned the car off the street and into a retaining wall at a public school site in Tulsa, in order to avoid hitting other automobiles and pedestrians in front of her. As a result of the impact between the Cadillac automobile and the wall, she suffered personal injuries.

From the time the Cadillac automobile was turned over to her for a trial drive, until she applied the brakes immediately before the accident, she used the foot brake to stop the automobile or slow it down on a number of occasions and the foot brake functioned normally. Shortly after the accident, a police officer of the City of Tulsa examined the automobile. He observed that the foot brake pedal was all the way down to the floorboard and that it would not spring back to its normal position when the brakes were not being applied. In the power brake assembly there is a V-shaped element called a relay arm, which moves on a pivot. One end of it is connected to an actuating rod of the power unit and the other end is connected by a clevis pin to a relay rod, which extends from the brake pedal to the relay element. The clevis pin is held in place by a cotter pin. The officer lifted the hood and further observed that the clevis pin was missing, resulting in a disconnection of the linkage and a failure of the foot brake to function when the pedal was depressed.

The salesman who delivered the Cadillac to Mrs. Heilig for the trial drive testified as a witness for the plaintiff. Counsel for the plaintiff offered to prove by such salesman that he had overheard a conversation between Joe Smith, a mechanic employed by Studebaker, and a third person, whose identity the witness had forgotten, in which Smith stated that after the accident he had replaced a pin in the brake system. The offer was rejected by the court on the ground that it happened after the accident. Counsel for Mrs. Heilig predicated such offer on the ground it would contradict answers to certain interrogatories propounded to Studebaker. However, while certain of the interrogatories propounded to Studebaker and its answers thereto were offered in evidence, the answers which counsel for Mrs. Heilig sought to contradict were not offered in evidence.

A mechanic who qualified as an expert on power brake assemblies like the one involved in the instant action, both by special school training and experience, testified that when he replaced a cotter pin to hold the clevis pin in place, he used a new pin. When asked what could cause the cotter pin to come out and permit the clevis pin to fall out and result in a disconnection in the linkage, he testified that it could happen because the ends of the cotter pin were not spread apart to hold it in place, or the head of the pin was too small for the hole in which it was placed, or through the breaking of a bad cotter pin.

Joe Smith was called as a witness for the defendant. He was an automobile mechanic of 26 years' experience. On August 9, 1963, prior to the accident, he

installed a reconditioned power cylinder in the foot brake assembly of the Cadillac involved in the accident. He testified that he disconnected the linkage by removing the clevis pin and the cotter pin, which held it in place, and then removed the power cylinder and the linkage still connected therewith by taking out four bolts; that after installing the new power cylinder and rebolting it in place, he reconnected the linkage by replacing the clevis pin and by putting a new cotter pin in the end of the clevis pin to hold it in place; that he spread the ends of the cotter pin apart, so it would stay in place; that after the brake assembly was thus repaired, he bled the brakes to get the air out and then road tested the car; and that the foot brake functioned normally and he had no difficulty in stopping the car by depressing the foot brake pedal.

The service manager for Studebaker also testified that after the power cylinder was replaced and before the accident he drove the Cadillac several times, used the foot brakes to stop for stop signs, and the brakes functioned normally.

On cross-examination Smith was asked if he had a conversation with Mrs. Heilig, in which she asked him if he was working at Studebaker, and when he replied in the affirmative stated to him, "I am the lady that was driving the Cadillac when the brakes went out," to which he replied that he replaced the pin in the brake linkage after the accident. The trial court sustained an objection to the question. Counsel for Mrs. Heilig stated it was offered to impeach the witness, Smith. The trial court held that Smith had not testified to anything contrary to the statements in the alleged conversation between Mrs. Heilig and Smith, and hence the evidence was inadmissible for purposes of impeachment.

After counsel for Mrs. Heilig had completed his case in chief and rested, he asked leave to amend the complaint by alleging that Mrs. Heilig at the time of the accident was a bailee of the automobile and that Studebaker was liable for any defects in the foot brake system assembly, under 15 Okl.St.Ann. § 453. The trial court denied leave to amend.

Counsel for Mrs. Heilig also asked leave to reopen the case and introduce testimony of an expert witness, who had not been listed as a witness at the pretrial conference or in any subsequent notice of witnesses to be called, given to Studebaker. The court denied the request. Counsel for Mrs. Heilig then offered to prove the qualifications of the witness as a physicist and with respect to cotter pins, and that witness would testify that cotter pins are made of malleable steel and will bend without breaking, and that the mathematical probability of a cotter pin failing by breakage is probably one in a million. The court sustained an objection to the offer.

■ It is a well-settled general rule that evidence of repairs made after an injury is not admissible as proof of negligence of the defendant.[1] The decisions of the Supreme Court of Oklahoma are in accord with such general rule.[2] Counsel seeks to bring the instant case within an exception to the general rule, on the ground that the evidence sought to be elicited from one of the witnesses was admissible to impeach answers to Mrs. Heilig's interrogatories propounded to Studebaker, but the interrogatories and the admissions thereto, upon which he relies, were not offered in evidence and answers to interrogatories do not become evidence in the case, unless voluntarily introduced by the interrogator as admissions against interest on the part of the party interrogated.[3] Hence, the proposed

1. See notes: 170 A.L.R. 9; 64 A.L.R.2d 1300.

2. Montgomery Ward & Co. v. Curtis, 199 Okl. 525, 188 P.2d 199, 204; Tway v. Hartman, 181 Okl. 608, 75 P.2d 893, 898.

3. Coca Cola Co. v. Dixi-Cola Laboratories, D.C.Md., 30 F.Supp. 275, 279; New England T. Co. v. Graver Tank & Mfg. Corp., D.C.R.I., 1 F.R.D. 411, 414; Patterson Oil Terminals v. Charles

evidence was not admissible for the purpose of impeachment.

■ The asserted conversation between Mrs. Heilig and Smith, with respect to repairs subsequent to the accident, was also inadmissible. Counsel sought to justify the introduction of that evidence on the ground that it impeached the testimony of Smith and was generally impeaching. Neither the witness Smith, nor any other witness for Studebaker, had given any testimony which the evidence sought to be elicited would contradict. The proferred evidence neither impeached nor in anywise rebutted evidence introduced by Studebaker. Consequently, it did not fall within any exception to the general rule.[4]

■■ The court did not err in denying the leave to file the amended complaint. The bailment statute upon which counsel for Mrs. Heilig predicated his right to amend is 15 Okl.St.Ann. § 453, which in part here material provides:

"A bailor must indemnify the bailee:

"First. For all damage caused to him by the defects or vices of the thing bailed; * * *"

\* \* \* \* \* \*

It would seem to make the bailor an insurer and the amended complaint would have completely changed the original theory of the action, which was predicated on alleged negligence. The amended complaint was tendered after counsel for Mrs. Heilig had completed his case in chief and rested. It clearly was not an abuse of discretion for the court under those circumstances to deny leave to file the amended complaint. Moreover, the Supreme Court of Oklahoma has held that a used car dealer who entrusts a used automobile to a prospective purchaser to test it by driving it is not an insurer and that his duty is to exercise reasonable or ordinary care in making inspections and tests to discover defects which would make the used car dangerous when driven by the prospective purchaser.[5]

■ Finally, we are of the opinion that the court did not err in not permitting the expert witness, Fearon, to testify. On the morning following the day counsel for Mrs. Heilig had completed his case in chief and had rested, at approximately 10 minutes before court was to reconvene, counsel for Mrs. Heilig notified Studebaker that he was going to call an expert witness by the name of Fearon for the purpose of offering additional testimony.

The pretrial proceedings were held on April 20, 1964. While the pretrial order in which the parties listed the names and addresses of the witnesses to be called by the parties was not signed until the week preceding the trial, counsel for Mrs. Heilig had been furnished with a list of witnesses to be called by Studebaker long before that order was signed and had talked with Smith and Studebaker's service manager. Fearon was not listed as a witness for Mrs. Heilig. A witness for Mrs. Heilig had testified that the cotter pin might have broken and thereby caused it to come out of the clevis pin and ceased to hold the latter in place. The primary purpose in seeking to introduce the evidence of the new expert was to undertake to show that the probability that the cotter pin broke was remote and, in effect, to overcome the testimony of Mrs. Heilig's own witness. Under all the circumstances, we do not think the court abused its discretion in sustaining an objection to the new expert being called as a witness for Mrs. Heilig.

We conclude that the trial was free from prejudicial error and the judgment is affirmed.

Kurz & Co., D.C.E.D.Pa., 7 F.R.D. 250, 251; Bowles v. Keller Glove Mfg. Co., D.C.E.D.Pa., 4 F.R.D. 450, 451.

4. See notes 170 A.L.R. 37, et seq.; 64 A.L.R.2d 1305, et seq.

5. Lawson v. Lee Eller Ford, Inc., Okl., 375 P.2d 913, 915; Hembree Chevrolet v. Southard, Okl., 339 P.2d 771, 773.