## The City of Newkirk v. Effie Dimmers.

### (Filed September 7, 1906.)

TRIAL—Remarks of Judge—Evidence. Under the law and the rules of practice in this territory the jury is the exclusive judge of the weight to be given the testimony of the witness, and a remark or the demeanor of a trial judge which amounts to an expression of opinion touching the truthfulness of the testimony of a material witness, is reversible error.

(Syllabus by the Court.)

*Error from the District Court of Kay County; before Bayard T. Hainer, Trial Judge.*

*Claude Duval, City Att'y* and *J. F. King,* for plaintiff in error.

*H. B. Martin,* for defendant in error.

### STATEMENT OF FACTS

This is an action commenced by the defendant in error in the district court of Kay county to recover damages for personal injuries alleged to have occurred and been occasioned, by being thrown out of a buggy, in consequence of a defect in the street in the city of Newkirk, in said county. The petition alleges:

"That on or about the 13th day of May, 1902, and for a long time prior thereto, with the knowledge of the officers and agents of the said defendant city of Newkirk, a deep ditch had been permitted to be cut by drainage in and across Magnolia Avenue (one of the streets of said city) extending across said avenue; that said ditch was of about the depth and width of 20 inches, and had theretofore been filled by drainage with very soft and yielding debris, water and slush, so that the same presented to the observer the appearance of being about level, etc."

Then follows the allegation that defendant carelessly and negligently permitted said ditch to remain in said condition.

It further alleges that on said day the plaintiff was riding along said street in a one horse buggy at a slow gait, that the front wheels of the buggy suddenly dropped down in said ditch with great force, whereby the axle to the buggy was broken and the plaintiff thrown out, and her left knee and the bones and ligaments thereof bruised, broken and torn, whereby she suffered great pain, and the permanent loss of the full use of her limb. That she employed medical attendance at a cost of $175.00 and prays for judgment in the sum of $10,175.00.

To this petition defendant city answered admitting its incorporation, and that said Magnolia Avenue was one of the streets of said city, but denied all the other allegations of the petition, and alleges contributory negligence on the part of the plaintiff.

The case was tried to a jury resulting in a verdict of $2,000.00 for the plaintiff. Motion for a new trial setting forth eleven specifications of error, was by the court consid-

ered and overruled, and the case comes to this court by a case made duly authenticated.

Opinion of the court by

GILLETTE, J.: There are many assignments of error set forth in the motion for a new trial and petition in error which have manifestly been abandoned by the plaintiff in error, as only four propositions are discussed in its brief, the first being refusal of the court to give instructions asked by the plaintiff in error.

Second: Excessive verdict, appearing to have been given under the influence of passion and prejudice.

Third: Error on the part of the court in propounding certain questions to a witness introduced on behalf of the plaintiff in error, which tended to reflect upon the veracity of a certain other witness, and the truth of such other witness's testimony.

Fourth: Error in permitting plaintiff to prove the amount she paid out for medicine and medical attendance instead of their character and reasonable value.

We will notice the third of these propositions first.

It will be remembered that the plaintiff in error, defendant in the court below, was defending the action upon the ground, among others, of contributory negligence and a witness, Minnie Eads, had testified that the horse drawing the buggy which the defendant in error was thrown from and injured, went into a mud hole in the street, at the place where the buggy axle-tree broke, in a fast trot or on a lope, that there was no ditch across the street, but that here was

a mud hole on the west side of the street.    This testimony,
if accepted by the jury trying the case, would leave the
plaintiff with but little ground for recovery.    The city at-
torney of the city of Newkirk, Mr. Hill, was afterwards offer-
ed as a witness on behalf of the defendant city, and upon
his cross examination the following colloquy is shown to
have occurred:

Cross-examination by Mr. Martin:

"Q.    Mr. Hill, are you the gentleman who trained that
little girl that was a witness yesterday?
"A.    No sir, I am not.    She was not trained.
"Q.    She said you trained her; what do you say to
that?
"A.    She didn't say so.
"Q.    Do you say she said you did not examine her be-  .
fore she went on the witness stand?
"A.    Once I examined her and once Mr. King.
"Q.    Did you know that little girl was going to swear.
there was no ditch across this road, or water there?
"A.    No sir, I didn't know it.
"Q.    You know that was not true, didn't you?
"A.    Well, I knew there was some water there at the
time I was there."

By the Court:

"Q.    Didn't you know it was muddy?
"A.    Yes sir.    I never talked with her about it.
Q.    Didn't you know what she was going to testify to
here?
"A.    Simply——
"Q.    Answer the question.
"A.    No sir, I did not.
"Q.    Isn't it a fact that you procured her to testify?
.  "A.    Some one brought her to me——

"Q. Answer that.

"A. No sir.

"Q. You knew it was muddy?

"A. Yes sir.

"Q. You were there the next day.

"A. Yes sir, or the second day afterwards.

"Q. And yet you permitted her to tesitfy that to this jury.

"A. Well——

"Q. Answer that.

"A. Yes sir, Mr. King examined her.

"Mr. King: I want to object to the remarks of the court.

"The Court: What remarks?

"Mr. King: In regard to procuring witness.

"The Court: I asked him if he did procure her."

By the Court:

"Q. Did you procure her to testify?

"A. No sir, I did not.

"Q. You knew she was going to testify.

"A. No sir, not on that point.

"Q. You knew it was muddy there?

"A. Yes sir, on that east side.

"The Court: I want to ask Mr. Hill another question.

"Q. This statement that you did not procure the little girl what is her name?

"A. Minnie Eads.

"Q. You did not procure her to testify to any of the facts she testified to?

"A. Somebody brought her to Mr. King and myself as to the speed of this rig. That is all I asked her about.

"The Court: I was not intending to reflect on counsel or anything of the kind. I only wanted him to explain that.

"Mr. King: I am satisfied your Honor did not intend that, but I thought the jury might misunderstand it.

"The Court: I wanted Mr. Hill to explain that, whether he procured the girl to testify to that, or whether she was brought here in the ordinary course. I don't want the jury to understand that the court was intending to reflect upon Mr. Hill, but simply wanted him to explain that."

The objection made on behalf of the plaintiff in error as shown above is sufficient to bring the question of error here presented before this court for review, notwithstanding the declaration it was not intended to reflect on counsel.

It is impossible to read the testimony here quoted without reaching a conclusion that the testimony of Minnie Eads was by such examination criticised as being untrue and as having been "procured," in fact false.

We presume the time will never come when, in a court of justice the receipt of testimony believed to be false, will not, by those chargeable with the conduct of the court, be received with regret, almost with horror, because an offense of this kind strikes at the very foundation of justice, and the impulse to expose it at once almost irresistable; but, in the trial of a cause before a jury it is the province of the jury alone to weigh the testimony of witnesses and give to, it such credence as in their judgment they believe it entitled to, uninfluenced by the judge before whom the cause is being tried. That a trial judge may exert an influence over a jury without speaking to them, and perhaps unconsciously, by mere demeanor or conduct touching the subject under investigation, is undoubtedly true, and where such influence has been exerted appellate courts have invariably held the trial to have been erroneous.

The clear and unmistakable inference to be drawn from the questions propounded by the court in this case, is that Minnie Eads had been procured to testify falsely in the case, and that some person, if not Mr. Hill, was responsible for it.

That this would have a tendency to lessen the weight if not wholly exclude the testimony of Minnie Eads from the consideration of the jury, or influence them adversely to its consideration, we think there can be no question, and it was therefore an erroneous proceeding in the trial of this cause.

In view of the conclusion here reached necessitating a re-trial of this cause, we deem it unnecessary to pass upon the other questions presented. The amount of the verdict, whether excessive or not, is immaterial of consideration now, as well as the question of the refused instructions.

The instructions given upon the trial of the case were good law, and not excepted to. They might and possibly ought to have been more full in some of the respects as applied for by the plaintiff in error, but as such questions are not liable to arise on a retrial of the case we pass them without opinion.

For the error above specified, the judgment of the lower court will be reversed, and the cause remanded with directions to sustain the motion for a new trial, and grant the plaintiff in error a rehearing in said cause.

Hainer, J., who presided in the court below, not sitting; Burford, C. J., dissenting; all the other Justices concurring.

Burford, C. J.: I concur in the conclusions reached in this case but dissent from the rule as stated in the syllabus, it being in my judgment broader than the law contemplates.