## SAWYER v. BROWN et al.

No. 14722—Opinion Filed May 12, 1925.

(Syllabus.)

1. **Appeal and Error—Prejudicial Error—Exclusion of Impeaching Evidence.**

In the trial of an action, the defendant, as a witness, may be impeached by showing that he testified in another proceeding involving the same subject-matter in a manner inconsistent with his testimony sought to be impeached, and it is prejudicial error for the trial court to exclude such testimony.

2. **Trial—Province of Jury as to Credibility of Witnesses—Court's Duty.**

In the trial of a cause before a jury, it is the province of the jury alone to weigh the testimony of witnesses, and give it such credence as, in their judgment, they believe it entitled to, uninfluenced by the judge before whom the case is being tried; and it is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in a case upon trial before them, or of the merits of any such case.

Error from District Court, Garfield County; James B. Cullison, Judge.

Action by H. W. Sawyer against Joe Brown, W. R. Williams, Midwest Insurance Company, Oklahoma State Bank of Enid, First National Bank of Hennessey, Hennessey Motor Company, Bison State Bank of Bison, Oklahoma Mill Company, and Curtiss

F. Thomas, for collection of a note and foreclosure of chattel mortgage. Judgment for defendants, and plaintiff brings error. Reversed and remanded.

Dinsey & Wheeler and Ernest F. Smith, for plaintiff in error.

Chalmers B. Wilson, for defendants in error.

PHELPS, J. This cause presents error from the district court of Garfield county, and while there are more than forty assignments of error, we deem it unnecessary to consider them all, for the reason that our examination of the record convinces us that the case should be reversed upon assignment of error No. 14. Joe Brown, the principal defendant, was upon the witness stand and was being cross-examined by Mr. Ernest F. Smith, one of the attorneys for plaintiff, and the learned trial judge interrupted the examination, and in the presence of the jury took charge of the witness, and we quote in full the colloquy as shown on pages 157, 158, 159, and 160, of the case-made as follows:

"The Court: What is the use to read that? You have him on the witness stand now. He doesn't understand what you are talking about there. He doesn't understand it. You are asking him about his withdrawal of one thing when he meant the withdrawal of something else. He has several times told you that he was to withdraw his suit against Mr. Sawyer—that after that, after his withdrawal of his suit against Mr. Sawyer, that is, Mr. Sawyer, that Mr. Sawyer was to withdraw his suit against him. That is a plain statement that is here before us. Mr. Wilson: If the court please, I think from his testimony, that the witness does not understand the meaning of the word 'execute.' I don't think he understands that. The Court: Certainly, and he does not understand the exhibits there and when you ask him if that is his signature, he says it is. Why don't you depend on your witnesses. You have your witnesses here. Mr. Smith: I want to show by this record that this witness made a statement in the former hearing, or when his deposition was taken in this case, in which he did not deny the execution of this withdrawal. The Court: The witness hasn't made any such statement and I will not permit you to make him make it. If you have any case here, you can prove it before this jury. Mr. Smith: To which ruling and remarks of the court, the plaintiff H. W. Sawyer objects and excepts. The plaintiff offers to prove by the former testimony of this witness that this witness, Mr. Joe Brown, the defendant, made a statement— The Court (interrupting): It will be rejected. Mr. Smith: In which he admitted the making and signing of the plaintiff's Exhibit 5, which is the withdrawal—The Court:

The court holds, after investigation, that the statement is not true and he never made any admission of that kind and it is not in the record and is therefore wholly incompetent, irrelevant, and immaterial. Mr. Smith: To which ruling and remarks of the court, the said plaintiff, H. W. Sawyer, excepts. The Court: Q. Mr. Brown, I want you to tell this jury,—Did you have a final settlement at your home with the plaintiff, H. W. Sawyer, in this case, regarding the lease and the settlement of those cases, some time in the month of December? A. The 28th day of December, we came to the final settlement. If you will let me explain it, I will explain it. Q. Just tell the jury how you settled? A. We came to a settlement. He had Mr. Buffington and those fellows down there and our agreement was that Mr. Sawyer was to give me three hundred dollars ($300.00) in cash money and two horses and a set of harness and a withdrawal from this suit, to give him possession of the place, to release the lease I had on the place for five years. We came to this agreement and everything was drawed up there and that was our final settlement. I thought I and Mr. Sawyer were out of court and everything. I went away from here then and moved over in Major county, and Mr. Sawyer thought I was gone, I guess. He comes in here before these fellows again and entered a plea for his eight hundred dollars ($800.00) and he claimed that he had a first mortgage on this property and this chattel mortgage and on this wheat and this crop and he was going to have his money and then had signed a contract with him and a judgment over to him, that I was to give him a judgment against me for this $800. Another thing: What looks to me so peculiar is if I was to give him a judgment against him for eight hundred dollars ($800.00) and then I owed him a note for eight hundred dollars ($800.00) why in the world did he give me three hundred ($300.00) dollars in cash money? Q. That is argumentative, Mr. Brown. You agreed to withdraw your suit against him, regarding the land? A. Yes, withdraw the suit regarding the land, yes. Q. And he agreed to withdraw this suit against you, that we are now trying? A. That is it, exactly. Q. I want the jury to understand that was your settlement with Mr. Sawyer, Mr. Brown? A. Yes, sir; it was. Q. You say that was reduced to writing at your home? A. It was. Q. But you never received a copy of this contract that you had between yourself and Mr. Sawyer, this contract of settlement? A. No, sir; I never got no copy of it at all. Q. That is all the jury wants to know. If they can prove otherwise, prove it."

It is a well-established principle of law that a witness may be impeached by showing that he testified in another proceeding involving the same subject-matter in a manner inconsistent with his testimony sought to

be impeached, and by invading the province of the jury in that regard and censuring plaintiff's counsel in the presence of a jury, and denying the plaintiff the legal right to show, or attempt to show, such contradictory statements by the defendant, as a witnes, we think the learned trial court committed prejudicial error. In Harrison v. State, 11 Okla. Cr. 14, 141 Pac. 236, the court said:

"It is the duty of trial courts to refrain from allowing their actions or words to indicate to the jury their opinion of the credibility of any witness who testifies in the case upon trial before them, or of the merits of any such case." Following the rule laid down in Reed v. State, 5 Okla. Cr. Rep. 365, 114 Pac. 1114.

This rule is followed in the very recent case of Westfall v. State (Okla. Cr.) decided April 18, 1925, in which the court, speaking through Judge Edwards, said:

"It is the duty of the trial court, in making any orders or ruling, in the presence of the jury, to refrain from intimating or expressing an opinion as to the credibility of the witnesses, the weight and value to be given to their testimony, the facts proven, * * * and the expression or intimation of such opinion is prejudicial error."

To be sure the above citations are from opinions in criminal cases, but the same rule seems to prevail in this state as applied to civil causes. In Aetna Life Insurance Co. v. Kramer, 65 Okla. 165, 165 Pac. 179, in the third paragraph of the syllabus thereof, this court made use of the following language:

"Trial courts in the exercise of their judicial prerogative have the right to reprimand a witness, who, contrary to the admonition of the court, persists in making voluntary statements not elicited by his examination. The admonition, however, must not be done by a word, sign, token, or gesture that would indicate the opinion of the trial court as to the merits of the case, or the truth or falsity of the testimony of the witness reprimanded."

And, in Newkirk v. Dimmers, 17 Okla. 525, 87 Pac. 603, the Supreme Court of Oklahoma Territory, having that subject under consideration, used the following language:

"In the trial of a cause before a jury, it is the province of the jury alone to weigh the testimony of witnesses, and give to it such credence as, in their judgment, they believe it entitled to, uninfluenced by the judge before whom the case is being tried. That a trial judge may exert an influence over the jury without speaking to them, and perhaps unconsciously, by mere demeanor or conduct touching the subject un-

der investigation, is undoubtedly true, and where such influence has been exerted appellate courts have invariably held the trial to have been erroneous."

Pressley v. Sallisaw, 54 Okla. 747, 154 Pac. 660; Atlantic C. L. R. & Co. v. Powell, 90 L. R. A. (N. S.) 769; State v. Tawney (Kan.) 105 Pac. 218; Levels v. St. L. & H. Ry. Co. (Mo.) 94 S. W. 275; Harrison v. State (supra); Reed v. State (supra); Skelley v. Boland, 78 Ill. 438; Rose v. Kansas City (Mo.) 102 S. W. 578.

Therefore, from an examination of the record in the case at bar, we can arrive at no other conclusion than that the learned trial judge, by excluding the testimony offered, and by his attitude and demeanor in the presence of the jury, committed prejudicial error, and for that reason the judgment is reversed and remanded, with instructions to grant a new trial.

All the Justices concur.

Note.—See under (1) 4 C. J. p. 1003; 40 Cyc. p. 2709. (2) 38 Cyc. pp. 1320, 1521; 16 R. C. L. p. 183; 3 R. C. L. Supp. p. 545; 4 R. C. L. Supp. p. 1045, 5 R. C. L. Supp. p. 873; 28 R. C. L. 657; 3 R. C. L. Supp. p. 1589; 4 R. C. L. Supp. p. 1835, 5 R. C. L. Supp. p. 1551.