EMPIRE OIL & REFINING CO. et al. v. FIELDS.

No. 28791. Nov. 26, 1940.

Rehearing Denied Jan. 7, 1941.

Application for Leave to File Second Petition for Rehearing Denied April 23, 1941.

*112 P. 2d 395.*

A. C. Hough, of Oklahoma City, and R. E. Cullison, of Bartlesville, for plaintiffs in error.

W. P. Morrison and John Morrison, both of Oklahoma City, for defendant in error.

HURST, J. This is the second time this case has been appealed to this court. Della Fields sued R. C. Ketzler and the Empire Oil & Refining Company, now known as Cities Service Oil Company, to recover damages for personal injuries claimed to have resulted from being shot in the back of the head by Ketzler while he was acting as a special officer or investigator of the oil company. Although the wound itself is trivial, plaintiff claimed that the shock caused her to have a miscarriage and that as a result of such miscarriage she suffered permanent injury to her female organs. She recovered a verdict for $25,000 at the first trial, and defendants appealed to this court. The judgment was reversed and remanded for a new trial on the ground that there was no medical testimony tending to show that the derangement of plaintiff's female organs resulted from the miscarriage or the shock, and the court erred in instructing the jury on this issue. Empire Oil & Refining Co. et al. v. Fields, 181 Okla. 231, 73 P. 2d

164. After the first trial and while the cause was pending in this court on appeal, plaintiff was subjected to an operation, and she amended her petition to allege that by reason thereof she has become sterile and has reached a premature menopause which has rendered her a permanent invalid and caused her a great deal of pain and suffering. Upon the second trial of this case, a verdict in the sum of $25,000 was again rendered in favor of plaintiff, and the defendants bring this appeal.

There are certain undisputed facts which appear to be substantially the same as those recited in the former opinion as having been established in the first trial. About 9 o'clock in the evening of July 1, 1933, plaintiff and her husband and small child drove their car to a point adjacent to a park outside the city of Seminole near the property of the Empire Company and parked. Across the road from the park was the home of one Mike Plummer. Plaintiff's husband had driven the car past Plummer's house, then turned around and stopped almost directly opposite it. Plummer came out, spoke to plaintiff's husband, and then went over into the park and got a five-gallon can of gasoline which had been hidden behind some rocks and started to take it to plaintiff's husband's car. Plummer testified that he did not know who owned the gasoline, but had seen someone hide it there that afternoon. Ketzler and another special officer were hiding nearby and when Plummer had taken the gasoline they apprehended him. Upon hearing the commotion, plaintiff's husband started to drive away, and Ketzler fired his gun in an effort to halt the car. Ketzler says he fired a sawed-off shotgun into the air. Plaintiff's witnesses say he fired a Winchester rifle directly at the car. Plaintiff says that as her husband drove off she looked back and saw the flash of Ketzler's gun, and then something struck her in the back of the head. The wound itself was simply a superficial skin wound, at most about an inch long and the width of a lead pencil. The claim for damages is based upon alleged shock and fright and injuries resulting therefrom.

We will treat the evidence in detail when necessary for a determination of the many questions raised on appeal.

1. Defendants contend that they were prevented from having a fair trial because of the misconduct of the trial judge. Under various propositions and at various places throughout their briefs they refer to the remarks and conduct of the judge. The only authorities cited are the line of cases holding that the trial judge should refrain from commenting on, or indicating an opinion in the presence of the jury as to, the merits of the case or the truth or falsity of the testimony. See City of Newkirk v. Dimmers, 17 Okla. 525, 87 P. 603; Settle v. Crawford, 155 Okla. 291, 9 P. 2d 38; Folsom-Morris Coal Mining Co. v. Scott, 107 Okla. 178, 231 P. 512; Sawyer v. Brown, 108 Okla. 265, 236 P. 404; Pressly v. Incorporated Town of Sallisaw, 54 Okla. 747, 154 P. 660.

(a) The only direct comment on the evidence which we find to have been made in the presence of the jury, except remarks made in connection with sustaining objections, hereinafter discussed, came about as follows: A witness who drove Ketzler and Plummer to jail after the shooting incident involved herein testified as to his reason for being there at that time, and defendants sought to show that he contradicted his testimony on the former trial as to this reason. Plaintiff sought to show that this contradiction was probably due to a stenographic error in the record of the former trial. On examining the present reporter, counsel for defendants asked if he ever knew the former reporter to make a mistake before. The judge then said:

"Oh, every one of them make mistakes. You lawyers all know that. There is no use trying to kid us here, now. If a reporter is infallible, we judges are angels. Let's get on. They are all good reporters, every one."

But even though such comment is improper, in view of section 3206, O. S.

1931, 22 Okla. St. Ann. § 1068, it cannot warrant reversal unless it violated a substantial right of defendants or "probably resulted in a miscarriage of justice." The matter here complained of is very trivial. The statement made is one of common knowledge, which the jury would know anyhow, and it is so qualified that we fail to see how any prejudice could have resulted therefrom. It therefore will not justify granting a new trial in this case.

In this same connection defendants complain of the questioning by the court of one of their witnesses as to the truthfulness of her testimony, but as this occurred after the jury had been excused and was not done in their presence, it did not violate the rule under discussion. We will have more to say of this in connection with the charge of intimidation.

(b) Defendants, under their discussion of bias and prejudice, also have much to say about the judge preventing them from proving many things by sustaining plaintiff's objections. But "a ruling by the judge which is subject only to the criticism that it is not in accordance with the law is not judicial misconduct." 64 C. J. 103.

(c) Defendants complain that the court impatiently remarked all through the trial about the length of time counsel for defendants was consuming in his examination of witnesses by such remarks as "we will be here until Christmas finishing this lawsuit," and "let's stumble along." We do not think it necessary to detail all the remarks complained of that may be classified as this type, for in 64 C. J. 92, § 93, the law with reference to this kind of conduct is correctly stated as follows:

"Counsel may properly be directed to refrain from delay, or to get on with the trial, or the judge may comment upon a waste or excessive consumption of time in the trial, so long as counsel is not unduly restricted, or his knowledge challenged or his motive impugned; and remarks expressing impatience with counsel, even though perhaps unwarranted, are not fatal where not such as to cause material prejudice."

The truth of the matter is that counsel for defendants consumed a great deal of time in both direct and cross-examination and spent considerable time on relatively immaterial matters going to the question of credibility. The trial proceeded for five days and the record contains about 1,000 pages of testimony. We do not think counsel was unduly restricted in his examinations, nor was he required to "skimp" over his testimony and cross-examination as he contends. Viewing the record as a whole, we do not see how any deriding or facetious remarks in this connection could cause material prejudice. In fact it is conceivable that such conduct on the part of the judge may engender the sympathy of the jury towards the counsel receiving the chides. We hold that the remarks of the type mentioned are not reversible error.

(d) Defendants complain of two matters which we consider immaterial, though not proper conduct, and will be discussed together. The first is that the judge sustained an objection when none was made and said that he did not hear any objection, "but I just considered one and sustained it." This occurred just after counsel for defendants had asked an expert medical witness, for the purpose of impeachment, about a statement in a book which the witness had just said he had not read or heard of. Defendants also say that the judge excused one of plaintiff's doctors before counsel were through with their cross-examination. This occurred upon recross-examination when counsel for defendant asked a hypothetical question, for the purpose of impeachment, concerning a matter which had already been substantially covered.

(e) Defendants complain that the judge forced one of their counsel (who was not actively conducting the case) to be seated. The record shows that this incident arose as follows:

"Mr. Corn: Except to the rulings of the court. The Court: Go ahead. You can have an exception to everything I say in this court. Mr. Corn: We want them and we will have them too. The Court:

I know you will, and I'm going to sit you down. Mr. Corn: I object to the remarks of the court— The Court (interrupting): Be seated. I ask you to be seated."

We think the action on the part of the judge was provoked by counsel's caustic remark, and as stated in 64 C. J. 92, § 93:

"Ordinarily counsel may not complain of slight or not seriously prejudicial impropriety in remarks or comment by the court where they are provoked by himself."

(f) We will now consider the remarks which are relied on most seriously as grounds for reversal. It is contended that these comments prejudiced the jury against defendants and intimidated defendants' witnesses so they could not properly and fully give their testimony.

A witness for defendants testified on direct examination with reference to plaintiff's physical condition about two weeks before the shooting incident on an occasion when witness and plaintiff and their husbands made a trip to Oklahoma City. When counsel for defendants asked the purpose of this trip, objection was sustained. Counsel for defendants offered to show that witness had been injured and plaintiff's husband was taking witness to a lawyer in Oklahoma City. Objection was sustained. On redirect examination in response to questions by counsel for defendants, the witness testified that plaintiff's husband was working for a lawyer and the purpose of the trip to Oklahoma City was to take witness's case to the lawyer. While witness was making this statement counsel for plaintiff interrupted with an objection. The judge directed the witness to go ahead and she testified further with reference to the matter. Counsel for plaintiff then cross-examined witness on this subject and when he asked about employment of attorneys for plaintiff in the instant case, counsel for defendants objected. Then followed the proceedings which are now relied on for reversal:

"The Court: Now, when that subject first came up I held it immaterial. Mr. Cullison (for defendants): I know that. The Court: And you started it and he objected to it and I sustained the objec-

tion, and you come right back to it and bring it out by your own witness, and she gets started on it before I can stop her, so I just let her go, you see. Now, go right ahead. Mr. Cullison: Except to the ruling and remarks of the court. The Court: You can't start something, you see, and then holler calf rope. Mr. Cullison: Except to the remarks of the court and ask a mistrial be declared in this case. This matter is irretrievable."

The judge then questioned the witness and asked her if she knew an objection had been sustained and if she understood what that meant. Witness replied: "He asked me again and I thought it was all right." The court thereupon excused the jury and questioned witness at some length regarding the truthfulness of her testimony, out of the presence of the jury. Subsequently counsel for defendants told the judge that his questioning of this witness had gotten around and "scared" the witnesses. The judge then called several witnesses before him and asked if any were "scared." They all replied they were not. One said: "Scared of what?" The witness who had been questioned was also present and said she was "mad," but not scared, and it was further disclosed that she had already given her material testimony before the court excused the jury and questioned her. These are the facts upon which reversal is sought for intimidation of the witnesses.

Two other incidents occurred during the examination of plaintiff about which defendants seriously complain. The first occasion came about this way: Counsel for defendants asked plaintiff that if her husband testified thus and so would she still say it was not a fact. Plaintiff's husband had not testified and was not a party to this action. An argument between counsel followed and counsel for plaintiff asked that the jury be excused. The record then discloses the following remarks by the judge for which reversal is sought:

"The Court: There is no use excluding the jury on that. It is an improper question and has nothing to do with this lawsuit at all. Mr. Morrison (for plaintiff): That is what I say, but counsel continues

to ask those kind of questions. Mr. Cullison (for defendants): Now, we object to counsel's remarks. The Court: The husband is an incompetent witness and in fairness to recognized rules of evidence, we just shouldn't undertake to go in the back door on this thing, don't you see? If he is offered as a witness and an objection is made to his competency, I am not going to let him testify. Now, if that is true I am certainly not going to let you, by innuendo or back door or any other method, undertake to introduce his testimony. That just wouldn't be fair. Mr. Cullison: At this time, if the court please, we ask the court on account of the remarks to declare a mistrial, believing that the effect is irretrievable. The Court: The effect is not irretrievable, and the effect of it will not prejudice this jury. These are intelligent men, and they know what I am telling you. A layman can understand the reason for that."

The other incident arose when counsel for defendants sought to ask plaintiff about a statement her husband was supposed to have made to the county attorney in plaintiff's absence. It appears from the record that objections to questions about what plaintiff's husband said to the county attorney had been already sustained several times prior to this incident. The following then transpired, for which defendants seek reversal:

"The Court: Now, do you have any testimony that she was there? Mr. Cullison: That she was where? The Court: That she was present when a statement was made. Mr. Cullison: I think she was not, Judge. The Court: Well, then, what in the name of common sense would the question be asked for in that manner except for one purpose, and what other earthly purpose could it serve except an attempt to get before this jury the statement of a witness who is an incompetent witness, the husband of this wife, the plaintiff. Just what could it be for? Mr. Cullison: To refresh her recollection and— The Court: (interrupting) You can't refresh her recollection or anybody's recollection of something that they didn't once know about. Mr. Cullison: That is true enough. The Court: You can't call it refreshing recollection. Mr. Cullison: But confronting them with a statement and asking them whether or not— The Court (interrupting): That would be the most flagrant violation of the rule I can imagine. I don't know what other purpose would be in it. Mr. Cullison: If the Court please, I expected all this to occur out of the hearing of the jury, and you will witness I tried to keep it out of the hearing of the jury. The Court: Anything you cause to occur will not occur out of the presence of the jury so far as I am concerned. I will not take the time to send them out. Mr. Cullison: I except to the remarks of the court and move for a declaration of a mistrial because that occurred.—"

Defendants complain of other remarks of the same nature, made in connection with refusing to excuse the jury while counsel made an offer of proof, which we do not deem necessary to quote.

We do not think these remarks of the judge constitute grounds for reversal. The record does not support the charge of intimidation. The comments of the court made in the presence of the jury are in fact admonitions to counsel made in connection with the reason for excluding testimony. It is not improper for a judge to give his reasons for excluding testimony (64 C. J. 95, § 99) and neither do we think the admonitions are sufficient grounds for complaint. Counsel for defendants persisted in asking questions which, in the sound discretion of the judge, were deemed immaterial and asked with the view of prejudicing the jury against plaintiff. These questions were many times repeated in substance, after objections had been sustained. The following statements express our views in this connection:

"Where counsel engaged in the trial of an action is guilty of impropriety or misconduct, a proper admonition, censure or rebuke by the presiding judge, in the presence and hearing of the jury, is ordinarily not prejudicial, where not couched in intemperate language, although it is ordinarily preferable that any rebuke be administered in the jury's absence. The judge is justified in using to counsel language sufficiently pointed and emphatic to put an end to objectionable conduct, and some warmth or asperity in interchanges between counsel and the court will not give ground for complaint, particularly in a hotly contested case." 64 C. J. 92, § 93.

"Improprieties or irregularities in the conduct of a judge are fatal, however, only where there is such departure from proper and orderly method of disposing of the action that the substantial rights of a party are materially affected. The manner of emphasis or force of expression of a judge that cannot be reasonably interpreted to express a wrong opinion as to the law or facts, or to express an opinion of a fact which should be left wholly to the jury, cannot be assigned as error, so mere decisiveness or abruptness of manner is not necessarily objectionable, nor is impatience, discourtesy, or bad manners, provided the essentials of sound judicial conduct are not violated, and complaint cannot ordinarily be made of the tone of voice used by the judge, unless some actual error is committed." 64 C. J. 102, § 107.

See, also, 26 R. C. L. 1028, § 29.

Other objections by defendants to certain remarks of the judge in the opening statement, as well as the fact that plaintiff was allowed to answer the opening statement of defendants as to certain personal charges, come within this rule and do not constitute grounds for reversal.

2. Defendants contend that the judgment is not sustained by sufficient evidence. The point raised is that there is no evidence to show that Ketzler was acting within the scope of his employment as defined by the pleadings. Plaintiff alleged that Ketzler was employed "for the purpose of protecting and guarding the properties of the said defendant corporations located in Seminole county, and making arrests of persons interfering with or taking property of said defendant corporations." The relation of principal and agent is established. The question is whether the agent was acting within the scope of his employment at the time of the shooting.

Defendants argue that under the allegation defining the scope of Ketzler's employment there must be proof that the stolen gasoline was in fact the property of the Empire Oil Company, and that the evidence shows no one knew who owned the gasoline. Speaking of the meaning of the term "scope of employment" it is said in 18 R. C. L. 797, § 255:

"* * * The general idea is that the employee at the time of doing the wrongful act, in order to fix liability on the employer, must have been acting in behalf of the latter and not on his own account. * * *"

The mere fact that it was subsequently ascertained that the stolen gasoline did not belong to Ketzler's employer would not be conclusive of this question so as to become a matter of law for the court.

In the former opinion in this case we stated the law with reference to the liability of private persons for tortious acts of public officers employed by them and held:

"The issue of whether such officers are performing duties for their employers or public duties, and whether their actions are tortious, are for the jury on proper evidence and instructions."

There was some competent evidence reasonably tending to support a finding that Ketzler was acting within the scope of his employment, and therefore the judgment cannot be disturbed for insufficiency of the evidence. National Life Ins. Co. v. Ford, 169 Okla. 102, 36 P. 2d 25; Ada-Konawa Bridge Co. v. Cargo, 163 Okla. 122, 21 P. 2d 1.

3. Defendants complain of the instructions given by the court, and of the refusal to give defendants' requested instructions. We will first consider the alleged errors in the court's instructions.

(a) Defendants contend that the court erred in not instructing the jury as to the allegations of plaintiff's petition defining the nature of Ketzler's employment. It appears from the record, however, that the court defined the issues by reciting the allegations of the pleadings and the matter complained of was thereby fully covered.

(b) Defendants contend that the court erred in giving its instruction defining proximate cause. They say that it was correct as far as it went, but should have been accompanied by defendants' requested instructions. In other words, de-

fendants complain of the refusal to give their requested instructions in this regard and we will treat this subject later.

(c) Defendants contend that the court erred in giving instruction No. 9, relating to liability of defendants, in that it did not mention defendants' theory of the case. The substance of the court's instruction was that plaintiff alleged that she was permanently injured by shock produced by a gunshot wound inflicted by Ketzler, who was at the time acting within the scope of his employment with the Empire Oil Company, and that as a direct result she suffered a miscarriage resulting in permanent injury to her nervous system and female organs, necessitating an operation, etc. The instruction then concluded:

"If you find and believe from a preponderance of the evidence in this case, that the plaintiff has proven said allegation, then it will be your duty to return a verdict in favor of the plaintiff and against the defendants R. C. Ketzler and Empire Oil & Refining Company for such damages as will reasonably compensate the plaintiff for such injuries as were direct and proximate result of the acts complained of, not to exceed the amount sued for, however."

The argument is that the court erred in not affirmatively instructing the jury that if they found that plaintiff's miscarriage and ensuing injuries were caused by some pre-existing disease or injury, they should find for defendants. In other words, defendants contend that the instruction should have been in the alternative.

The question of whether Ketzler was acting within the scope of his employment and the question of whether plaintiff used reasonable care in treating her injuries were covered by other instructions, so the only question here is whether the failure to instruct with respect to proximate cause in the negative is reversible error. But even though the instruction is defective in this respect, we do not see how the jury could have been misled thereby where, as here, the jury is clearly and plainly instructed that to find for plaintiff they must find that the act was the proximate cause of the injury. The inference is so clear that under any other circumstances, that is, if the injuries resulted from any pre-existing cause, the jury must find for defendants, that we do not think the judgment should be reversed for this reason. St. Louis-San Francisco Ry. Co. v. Eakins, 141 Okla. 256, 284 P. 866.

(d) Defendants complain of the giving of instruction No. 10, defining an act performed within the scope of employment and stating that the burden is on plaintiff to prove that Ketzler's acts were performed within the scope of his employment, and that if plaintiff failed in such proof by a preponderance of the evidence, the verdict should be for defendants. Defendants point to Ketzler's special deputy sheriff commission and then say that at the time of the transaction complained of he was acting in a public capacity. As above pointed out, there is evidence sufficient to make this a question for the jury. In their reply brief defendants seem to complain of this instruction on the ground that it sets no standard for determining whether the officer was acting in a public or private capacity, and object to it for the same reason they object to instruction No. 9, that is, the court defines a private capacity but not a public one. For the reasons above stated this contention is without merit.

(e) Defendants complain of the court's instruction authorizing the jury to consider the life expectancy of plaintiff in connection with compensation for future pain and suffering. This was not error. In annotation, 28 A. L. R. 1177, at page 1181, it is said:

"It seems that in any event the life expectancy of the injured party would be a proper matter for the jury's consideration, since, as has been pointed out, the probable duration of pain and suffering has an important bearing on the extent of the injury in that particular."

Defendants argue that plaintiff was not a normal, healthy person and the jury should have been instructed in considering her life expectancy to take into account her poor health. They also

argue that the jury should have been told to consider only the present value of the damages for future pain and suffering. But it is sufficient to say that we find no requested instructions on these matters. Rose v. Cochran, 84 Okla. 148, 202 P. 1003.

(f) We now consider defendants' requested instructions. They are classified into three groups. The first group consists of five instructions requesting in effect that the jury be told that they must find that plaintiff was shot and that they must agree upon the kind of gun used. It is argued that the failure to give these instructions permitted the jury to return a verdict based on speculation. But we do not think these matters are material to plaintiff's cause of action. The court fairly stated the law in this regard, and therefore it was not error to refuse to give these requested instructions. Oklahoma City-Ada-Atoka Ry. Co. v. Riddle, 183 Okla. 318, 82 P. 2d 304.

The second group consists of six instructions concerning larceny, receiving stolen property, aiding and abetting in the disposition of gasoline in evasion of the state tax, the rules concerning the right of officers to arrest, the conditions upon which an officer would be liable for such attempted arrest, and the question of injuries to bystanders in making arrests. But the record does not show that Ketzler was attempting to make an arrest. Ketzler testified that he was trying to stop plaintiff and her husband to talk to them. In the absence of evidence that Ketzler fired while attempting to make an arrest for the commission of a felony it was not error for the court to refuse these instructions. Hearn v. Blakeney & Ambrister, 146 Okla. 122, 293 P. 225. But defendants further argue in this connection that the allegation in plaintiff's petition to the effect that Ketzler shot at plaintiff and her husband "for the purpose of stopping and arresting them" constitutes an admission that Ketzler was making an arrest and dispenses with proof on this issue. But we do not consider this alle-

gation to be a solemn judicial admission such as will do away with the necessity of proof. Tway v. Hartman, 181 Okla. 608, 75 P. 2d 893.

The third group consists of four instructions which deal with the question of whether Ketzler was acting within the scope of his employment. The law in this regard is stated in the former opinion in this case and the instructions given substantially cover the matter. It was not error to refuse these requested instructions. Garrett v. Haworth, 183 Okla. 569, 83 P. 2d 822.

4. Defendants contend that the court erred in rejecting certain evidence. They first complain of the refusal of the court to admit certain photographs taken about four years after the shooting incident and showing a woman, not the plaintiff, sitting in an automobile. The purpose was to show the angles from which the shot was fired and what the position of the car would have been with reference to Ketzler's position when he fired. The court rejected them on the ground that they were purely demonstrative. This was not error. See Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 P. 747; Massey v. Ivester, 168 Okla. 464, 33 P. 2d 765. The same is true as to the court's rejection of a blue-print showing the scene and angles from which the shot was claimed to have been fired under the conflicting evidence.

Defendants complain of the exclusion of a piece of metal taken from the hood of an automobile which, by way of experiment, had been shot with a shotgun from a distance of 75 feet. It was offered to show the effect of the shot. However, witness testified without objection as to the effect of shot on such metal at that distance and it was not error to reject this exhibit.

Aside from the refusal to receive these exhibits, defendants complained of the exclusion of certain testimony by a firearms expert witness with reference to whether shots fired at various angles would strike the side of an automobile before it could hit the occupant, and also testimony as to the effect of human hair

on the course of a bullet. We deem it unnecessary to discuss the admissibility of this testimony, for even if we assume that the court erred in rejecting it, the error would not be grounds for reversal. Plaintiff's cause of action is based upon the tort of assault or assault and battery. 5 C. J. 615, et seq.; 2 R. C. L. 524, et seq.; 4 Am. Jur. 123, et seq. The gravamen of the action is the shock with its resulting injurious consequences. The question of whether plaintiff was struck by the bullet or shot is relatively immaterial. Therefore, we do not think the error, if any, in excluding this testimony resulted in a miscarriage of justice. Pierce v. C. I. T. Corporation, 170 Okla. 633, 41 P. 2d 481.

5. Defendants contend that the venue was not properly laid in Oklahoma county. This matter was settled in the former opinion and is the law of the case. Stuckwish v. St. Louis-S. F. Ry. Co., 177 Okla. 361, 59 P. 2d 285.

6. Defendants contend that the court erred in denying their application to supplement the case-made by including a statement of certain remarks which defendants say the judge made during the course of the trial. This application appears as part of the case-made. Thereafter appears a statement of the judge denying the application and reciting what he says occurred. Defendants' contention is that the judge's statement is not correct. They mention the statute authorizing such matters to be heard before a special judge (sec. 541, O. S. 1931; 12 Okla. St. Ann. § 965), but no attempt has been made to follow this procedure. No evidence in this regard appears in the record and there is nothing for us to review.

7. Finally, the defendants contend that the verdict is excessive. Plaintiff was 20 years of age at the time of the shooting incident. She introduced testimony showing that she suffered considerable pain, and serious injuries to her female organs which are permanent in nature, and that she will suffer the consequences of premature change of life, and will require hyperdermic injections in the future. There was also competent evidence to show that the condition of plaintiff's female organs resulted from the miscarriage, which in turn was produced as a result of shock following the gunshot wound.

We have given careful consideration to this question, including the fact that juries have awarded plaintiff damages in the sum of $25,000 in each of two trials. We have concluded that under all the circumstances the verdict is grossly excessive to the extent of $5,000, and the sum of $20,000 will fully compensate her for the injuries sustained. Southern Kansas Stage Lines Co. v. Crain, 185 Okla. 1, 89 P. 2d 968.

Therefore, if the plaintiff will file in this court a remittitur for all in excess of $20,000, and the interest thereon from date of verdict, the judgment as thus corrected will stand affirmed; otherwise, the judgment will stand reversed for a new trial.

Plaintiffs ask for judgment on the supersedeas bond filed herein by plaintiffs in error as principals and the Hartford Accident & Indemnity Company as surety. It is so ordered on condition that said remittitur is filed.

RILEY, OSBORN, DAVISON, and NEFF, JJ., concur. BAYLESS, C. J., WELCH, V. C. J., and GIBSON, J., dissent. CORN, J., absent.