TEXAS CO. v. HARRISON.

No. 31091. June 1, 1943.

Rehearing Denied June 29, 1943.

Application for Leave to File Second Petition for Rehearing Denied October 19, 1943.

*141 P. 2d 802.*

John R. Ramsey and B. W. Griffith, both of Tulsa, and Hamilton & Kane, of Pawhuska, for plaintiff in error.

Frank T. McCoy, John R. Pearson,

and John T. Craig, all of Pawhuska, for defendant in error.

RILEY, J. This is an appeal from a judgment obtained by defendant in error, hereinafter referred to as plaintiff, against plaintiff in error, hereinafter referred to as defendant, for damages for alleged permanent injury to plaintiff's land claimed to have been caused by surface and subsurface pollution from salt water permitted to escape from oil wells operated by defendant.

Plaintiff, since some time prior to 1928, was the owner of 320 acres of land in Osage county. Defendant operated a number of oil wells, some of which were on land owned by plaintiff. But most of the wells were located on lands adjacent to and north of plaintiff's land. The natural drainage of the land upon which defendant operated its wells was by draws or ravines running south through and across plaintiff's land.

Plaintiff in his petition alleged that from about 1928 down to the date of filing this action defendant had:

" . . . produced great quantities of salt water and other deleterious and poisonous substances from the aforementioned oil lease, and have caused . . . great quantities of salt water and other deleterious and poisonous substances to escape, run over the surface of the land into fresh water, to sink into the soil, permeate the same and the fresh water strata therein, injected such poisonous substances into an oil well on said premises from which it escaped and entered the surface water and subsurface water sands, thoroughly polluting and poisoning the same and that both by surface and underground drainage said pollution thoroughly impregnated the fresh water on and under plaintiff's said land, which water was used for watering stock, thereby poisoning and polluting said water, water sands and soils for an indeterminate and unpredictable period in the future and killed the vegetation down the natural drainage, which is approximately in the center of said land east to west and running entirely through the same from north to south; . . . has so damaged said land and will continue to so damage said lands for an unpredictable time in the future so as to make it of very little value to plaintiff . . ."

Defendant specifically denied that plaintiff's land was damaged as alleged.

The issues were tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $2,730. There are four general propositions presented for reversal of the judgment.

The first proposition is that the court erred in permitting plaintiff, in fixing the fair market value of his land before and after the alleged injury, to prove plaintiff's land was used as a part of a larger tract, the other part of which was owned wholly or partially by other members of plaintiff's family.

The land belonging to plaintiff involved herein was enclosed with 560 acres of other land belonging to plaintiff and other members of his family. It is used chiefly for grazing cattle. Plaintiff's witnesses, over the objections of defendant, valued the land in view of the fact that it was enclosed and used with other land. Defendant contends that this evidence permitted the jury to allow damages to the other land, and asserts that the jury must have done so. The record does not sustain such contention. The trial court advised the jury that damages, if any, allowable to plaintiff should be confined to injury done to the particular 320 acres of land owned by plaintiff and described in the petition.

The evidence complained of was admissible under the general rule that in fixing the fair market value of real property, if the property has a special utility or availability to other parties who could use the same for the particular purpose, then this utility or availability may be shown. United States v. Boston, C. C. & N. Y. Canal Co., 271 Fed. 877; City of Tulsa v. Creekmore, 167 Okla. 298, 29 P. 2d 101.

The second proposition is that the court erred in admitting in evidence a certain diagram by which plaintiff sought to prove subsurface pollution and resultant injury to fresh water

sands under his land. By the use of this diagram there was shown an injection well, a salt water pond and a producing well, and by the use of colors the diagram depicted various subsurface formations. The diagram was identified by B. L. Martin, a civil engineer of long experience in the disposition of salt water and other deleterious substances from oil fields. The witness testified that the diagram did not show any actual condition of the particular oil field or the lands of plaintiff, but that the diagram was what he termed "schematic." Its apparent purpose was to explain a theory as to how subsurface pollution might occur. There was no evidence that any of the subsurface strata shown on the diagram actually existed on or under the lands of plaintiff.

It is common practice to receive in evidence photographs or unofficial maps, plats, diagrams, or sketches for the purpose of giving a representation of objects and places which generally cannot otherwise be conveniently shown or described by witnesses. When proved to be correct they are admissible. 22 C.J. 910. The requirement as to accuracy does not extend to strict mathematical accuracy or accuracy in every detail. Missouri, K. & T. Ry. Co. v. Smith, 97 Okla. 152, 223 P. 373.

When intended to illustrate a hypothetical situation and to explain the theory of the party offering same as to how the injuries complained of might have happened, such photographs, maps, etc., are not admissible in evidence. Colonial Refining Co. v. Lathrop, 64 Okla. 47, 166 P. 747.

Pictures of scenes set up by a defendant, not as true pictures of the existing conditions nor to establish topography, but for the purpose of illustrating defendant's theory of the case, are inadmissible. Massey v. Ivester et al., 168 Okla. 464, 33 P. 2d 765.

See, also, Empire Oil & Refining Co. et al. v. Fields, 188 Okla. 666, 112 P. 2d 395.

The third proposition is that the court erred in excluding evidence offered by defendant as to condition of the land at the date of the trial, intended to prove that the land at that time showed no evidence of damage from salt water or oil field pollution.

Plaintiff's case is based upon permanent injury to the land involved. He alleged that the water, water sands, and soils of his land had been so poisoned and polluted and so thoroughly impregnated that it would not be restored to its former condition of fertility during the lifetime of plaintiff and for an unpredictable time in the future, so that the injury was permanent. He alleged that it became obvious that such injury was permanent a short time before the commencement of this action, which was July 10, 1934.

The case was tried once before, resulting in a verdict and judgment for defendant. Plaintiff appealed and the judgment was reversed as to the Texas Company on the ground of erroneous instructions as to when the statutes of limitation would begin to run against plaintiff's cause of action. Harrison v. Texas Co. et al., 188 Okla. 124, 106 P. 2d 1110. This trial was had, commencing January 27, 1942, about seven and one-half years after the action was commenced. Plaintiff and his witnesses testified that the land had been permanently injured; that a lot of it looked worthless, and that there will never be any grass on it; that it will never be back where it was, and that it would take many years for the surface water to dilute the salt concentration.

Defendant offered in evidence a number of photographs taken a short time before the trial purporting to show grass growing at different places on the land along the draw or drain and down to the edge of the water. Defendant also offered the testimony of witnesses who were acquainted with the land before and after the alleged injury as to the condition of the land some ten days before the trial, and offered to prove by them that they went all over the land and examined each 40-acre tract, and that it was then covered with good blue stem grass in all the portions there-

of which were not covered by too heavy timber, and that the grass was growing up to the edge of the water in a little creek, and that all of the land excepting that immediately adjacent to the oil wells on two of the 40-acre tracts showed no evidence of any injury from pollution. All this testimony was objected to as being incompetent, irrelevant, and immaterial, too remote, and not within the issues. The objection was sustained, as stated by the court, "because we are confined to the value of this land immediately after the condition complained of in the plaintiff's suit was supposed to have existed, and the time is too remote from 1932 and 1934 to be considered at this time as to any change of condition."

The court evidently had in mind the rule as to the measure of damages for injuries to land as being the difference between the fair market value immediately before and immediately after the injury and in effect ruled that the plaintiff could prove the condition of the land down to the time of the trial in order to show permanent injury, but that defendant could not show the condition of the land after the time plaintiff alleged and his proof tended to show the alleged injury had become obviously permanent. The court apparently overlooked the issues: (1) Whether the land had been injured; (2) whether the injury was permanent, and considered only the effect of the injury, if permanent, on the fair market value of the land.

The injury here complained of is not one necessarily permanent, such as the washing away of a part of the soil. It is an injury which common experience teaches is abatable in time by the action of the elements. The contention of the defendant was that the land had not been injured, and that if it had been injured, it was restored to its former usefulness and fertility, and therefore the injury was not permanent.

In Big Five Mining Co. v. Left Hand Ditch Co. et al., 73 Colo. 545, 216 P. 719, it is held:

"The general rule that damages to real estate are to be determined by finding the difference between its value before the injury and its value afterwards is not of universal application; there being cases in which the rule would not do justice."

It is perfectly clear that if plaintiff's land showed no evidence of injury or damage in January, 1942, it had not been permanently injured and its usefulness had not been destroyed for an indefinite, unpredictable time in the future.

The primary object in any action of this nature is to determine the amount of loss, and whatever rule is best suited to that purpose should be adopted. Slane v. Curtis, 41 Wyo. 402, 286 P. 372.

In view of the fact that plaintiff was permitted to introduce evidence tending to show that his land had been so injured that its usefulness and fertility had been destroyed for an indefinite and unpredictable time in the future, it was proper that defendant be allowed to introduce proof, if such it had, that the injury had already abated.

Defendant also complains of error in refusing to permit the jury to view the premises. This is a matter largely within the discretion of the trial court, and his ruling thereon will not be disturbed in the absence of a showing of abuse of discretion.

It is also contended that the court erred in refusing certain instructions offered by the defendant. We have examined the offered instructions and find no error in refusing them.

Reversed and remanded for new trial.

CORN, C. J., GIBSON, V. C. J., and BAYLESS, WELCH, HURST, DAVISON, and ARNOLD, JJ., concur. OSBORN, J., absent.